EDISON ELECTRIC LIGHT CO. et al. v. MT. MORRIS ELECTRIC LIGHT CO. et al.

SAME v. UNITED ELECTRIC LIGHT & POWER CO.

(Circuit Court of Appeals, Second Circuit. November 8, 1893.)

**1. PATENTS FOR INVENTIONS—INJUNCTION—LACHES.**
Persons who establish a plant for the use of infringing electric lamps pending a suit to test the validity of the patent, which is brought and pressed with reasonable diligence, have no equities to prevent an injunction because the patentee delayed suing them until the patent was sustained in the test suit. 57 Fed. Rep. 642, affirmed.

**2. SAME—EQUITIES—INFRINGING USERS—LICENSEES.**
An equity to be supplied with electric lamps by the manufacturing patent owner, at reasonable rates, may arise in favor of one who, pending a suit to test the patent, and while foreign decisions thereon were conflicting, has purchased from an infringing manufacturer an expensive plant, requiring the lamp for its operation; but this equity does not apply as between an exclusive licensee for a given territory, who has expended large sums on the faith of the patent, and an infringer, who has invaded such territory pending the test suit. 57 Fed. Rep. 642, affirmed; Edison Electric Light Co. v. Sawyer-Man Electric Co., 3 C. C. A. 605, 53 Fed. Rep. 592, limited.

**3. SAME—PECUNIARY LOSS.**
The fact that an infringing user of an electric lamp necessary to the operation of its plant has made great expenditures looking to future extensions of its business is no ground for refusing to enjoin it from going into new territory and buildings, or from continuing to light buildings which it first lighted after the patent was sustained by the circuit court in a test case; and the great pecuniary loss which the infringer would suffer by an unqualified injunction only gives it an equity to be allowed to use the patented lamp, for a reasonable compensation, in the buildings it had lighted prior to the decision in the test suit. 57 Fed. Rep. 642, modified.

Appeals from the Circuit Court of the United States for the Southern District of New York.

In Equity. Bills by the Edison Electric Light Company and the Edison Electric Illuminating Company of New York against the Mt. Morris Electric Light Company and others, and the United Electric Light & Power Company, for infringement of a patent. Preliminary injunctions were granted below, (57 Fed. Rep. 642,) and defendants appeal from the orders granting the same. Modified.

Benj. H. Bristow and Paul D. Cravath, for appellants.

Charles E. Mitchell and Eugene H. Lewis, for appellees.

Before WALLACE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge.    These appeals are from orders of the circuit court for the southern district of New York, which granted preliminary injunctions to restrain the infringement by the defendants of the second claim of letters patent No. 223,898, dated January 27, 1880, to Thomas A. Edison, for an incandescent electric lamp.    The patent is commonly called the "incandescent lamp" or the "filament" patent.    The Edison Electric Light Company, hereinafter called the Light Company, is the owner of the patent; the second complainant, hereinafter called the Illuminating Company, "is the sole and exclusive licensee of the right to use and vend incandescent electric lamps under such patent in and for the city of New York, for that portion of the city lying below Seventieth street; and it seems not to be disputed that the lamps used by the defendants are so used within that portion of the city."

The Illuminating Company was incorporated in December, 1880, for the purpose of producing electricity, and distributing it for light, heat, and power, in the city of New York, and on March 23, 1881, made its first contract with the Light Company, by which it secured an exclusive right to use the Edison patents, among which was the incandescent lamp patent, in certain portions of the city.    It has paid to the owners of the Edison patents, for its exclusive rights, in cash and in stock at par, more than a million dollars, and its investments for the purpose of a general system of incandescent lighting have been exceedingly large.    In May, 1885, the Light Company commenced its suit against the United States Electric Lighting Company to test the validity and establish the scope of the lamp patent, which was decided by the circuit court for the southern district of New York on July 14, 1891, (47 Fed. Rep. 454,) and by this court, upon appeal, on October 2, 1892, (3 C. C. A. 83, 52 Fed. Rep. 300.)

The United Electric Light & Power Company, now an extensive incandescent lighting company, was organized in February, 1887, and commenced business in 1888.    "It thereafter, in 1889, entered into such relations with the United States Illuminating Company that the business of the two companies was conducted, practically, under one management."    The last-named company was organized in February, 1881.

The Mt. Morris Company was organized in 1886 for the purpose of furnishing electric power and electric light, both arc and incandescent.    In 1888 it commenced to furnish incandescent light, which is now the principal part of its business.    Each of these companies has a very large capital, has invested large sums in its business, and each asserts that the principal part of its investment would become valueless, if it could not pursue the business of incandescent lighting.

It is said that the lamp patent will expire in November, 1894.

The defendant companies are anxious to supply themselves with the Edison lamps. The Light Company is prevented from selling, for use within the territory occupied by the defendants, to other than its exclusive licensee. The Illuminating Company has recently declined to sell the patented lamps to the defendants. No question was made before the circuit court, or is made upon this appeal, as to the validity or scope of the second claim of the patent, or as to the fact of its infringement by the defendants.

The defendants rest their opposition to the orders of the circuit court entirely upon the equities which are alleged to exist in their favor, and to be large and imposing. The defense of laches or delay on the part of the owners of the patent in enforcing or prosecuting their rights by litigation, of neglect to give infringers timely notice of the monopoly which the owners claimed, and their acquiescence in the conduct of infringing and rival companies,—a defense which has become familiar in this litigation,—has been again urged. The facts in the former cases were insufficient to justify this defense, and these defendants, which did not come into existence until a year or two after the test suit was commenced, and which did not begin the business of incandescent lighting for a period of three years thereafter, have no important new facts to present. It is sufficient to quote with approval the remarks of Judge Lacombe upon this point:

"This defense of laches or delay on the part of the owners of the patent was urged upon the court of appeals at very great length, upon most voluminous evidence, in Edison Electric Light Co. v. United States Electric Lighting Co., 3 C. C. A. 83, 52 Fed. Rep. 300, and that court decided that no case was shown to authorize the refusal of an injunction on any theory of laches or equitable estoppel, by reason of undue delay in bringing suit, or acquiescence in known infringement. Subsequently the same point was urged upon the same court, again at great length, in Edison Electric Light Co. v. Sawyer-Man Electric Co., 3 C. C. A. 605, 53 Fed. Rep. 592, and the same opinion expressed. The facts presented here do not change the situation, so far as the complainants are concerned. The same measure of delay is shown, and the same excuse for that delay is also shown. Twice has the court of appeals held that the original test suit (that against the United States Electric Lighting Company) was timely begun, and pressed with proper diligence. It has also held that, such suit proceeding with due diligence, no other infringers of the patent can be heard to complain, with reason, that separate suit was not brought against them. Further discussion of the same facts in this court is unnecessary, and out of place. The situation is not changed by the circumstance that these are different infringers, with a different history from that of the defendants in the earlier suits." 57 Fed. Rep. 644.

The defendants next urge that they are illuminating, and not manufacturing, corporations, and have an equitable claim to consideration "growing out of the obscurity of the patent, and the fact that, prior to the decision of the federal court in this circuit sustaining and construing it, there were conflicting decisions upon it in foreign countries," and invoke in their favor the general remarks of this court in the Sawyer-Man Case, discriminating between manufacturing companies, who were competitors of the Edison companies, and users of lamps. The court said:

"The users who have supplied themselves with electric lighting plants from the infringers, which required for their operation lamps of the patent, are, of course, infringers. But those who did so before the decision of the circuit court sustaining the patent, and at a time when judicial decisions in foreign countries interpreting the patent were in conflict, and who are now willing to accept their lamps from the complainants upon reasonable terms, have much stronger equities than the manufacturing infringers. These equities the court will not disregard, but what would be reasonable terms, if an application were made to the court in behalf of these cases, is a question which can only be determined in each case upon its peculiar circumstances."

This language was used with reference to the condition of the electric lighting business, which was then being pressed upon the attention of the court, in which the owner of the patent, being a lamp manufacturer, had the ability to supply the patented lamps to users who had previously supplied themselves with electric lighting plants from the infringers. The court was not speaking of cases in which the Light Company had, by its contracts, precluded itself from supplying lamps in a particular territory to any person or corporation except its own exclusive licensees. It was not discussing the equities as between an illuminating company which was the exclusive licensee of the Light Company, and an infringing competitor upon the territory of the licensee. In such a case the remarks of the court in the Sawyer-Man Case, with reference to the alleged equities of manufacturing infringing corporations, which were competitors of the Edison companies, are quite applicable. An illuminating company, the exclusive licensee of the Edison Company, which has made a large pecuniary investment upon its confidence in the strength and validity of the patent, and in the ultimate success of the litigation in which its life was at stake, and has made an enormous outlay in the attempt to render incandescent lighting successful upon a large scale, has an imposing equity to protection by the courts, as against a competing infringer, who has sold and used the very lamps which have been declared, as the result of an expensive litigation, to be the exclusive property of the owner and licensee. In such a case, the equitable owner of the patent is entitled to protection at the hands of a court of equity, provided too great pecuniary injury is not thereby visited upon the infringer. It is by no means the duty of a court of equity to cause an infringer, who is a user, to suffer a pecuniary calamity, which ruins him, and is far out of proportion to the benefit which the owner of the patent would otherwise be entitled to receive.

The strength of the defendants' case lies in the alleged extent of injury which they would suffer from an entire stoppage of the supply of incandescent lamps. It is insisted by their counsel that they would be ruined, and thus an immense pecuniary loss would be caused. This result is not absolutely certain. Similar unfulfilled prophecies have been made before in the progress of this litigation. It is not certain that noninfringing lamps may not be used, which can be partially successful; but we have a well-grounded fear that an absolute inability to obtain any Edison lamps for any portion of the business heretofore conducted by the defendants will create a pecuniary injury so extensive as to be inequitable.

Turning to the consideration of the modifications of the orders, which may properly be made, the defendants ask for an absolute reversal, and that they be permitted to use the Edison lamps, not only for their present, but also for their future, incandescent business, the only restriction being that they pay a reasonable price therefor. They desire that the illuminating company be compelled to furnish lamps to which it has an exclusive right, and that by their use the defendants shall be enabled to extend their competitive business as widely as their capacity and enterprise will permit. The affidavits of Mr. Brown, for the defendant companies, say that a very large proportion of the investment of each company is for the purpose of taking advantage of future business; that the stations of each company are very much larger than the present requirements of the business demand; that each has one unused station, which was constructed for the purpose of meeting future demands; that many miles of the ducts which each has leased are unoccupied, having been leased by the defendants to accommodate the growth of their business; and that the cables which they have constructed have a greater carrying capacity than the present requirements of the business demand in order to meet future needs. He further says that no effort has been made for the past two or three years, by either of them, to extend their business. The growth has been due to unsolicited application.

The defendants, in desiring to obtain an unlimited future capacity of ownership of the patented lamps, for the purpose of extending their competitive power, are asking too much. We perceive no controlling equity which should cause us to compel the Illuminating Company, which owns an equitable title to the lamp patent, to sell lamps to a competitor for the purpose of enabling it to utilize the unused portion of its plant, and extend its business into unoccupied territory, and thus permit it to deprive the owner of all the material benefit of the patent during the comparatively brief residue of its life. Neither is there a controlling equity which requires a court to permit the defendants to use the complainants' patent in buildings which have been lighted by either of them since July 14, 1891,—the date of the decision by the circuit court in the test suit. At that time the defendants knew that the validity of the patent had been declared by a federal court in the district in which they lived. Ignorance in regard to the character and meaning of the patent, then, in a measure, ceased to exist. They presumably knew that the owner of the legal title had parted with its equitable rights to the use of the patented lamps, upon the territory which they were occupying, to a rival lighting company, and that the licensee was not a manufacturer. From that date, the defendants knew that they were in danger of being ultimately declared infringers, and that desired privileges must be obtained, not from the manufacturer, but from a competitive user of the patent.

Let the preliminary injunctions already granted by the circuit court be modified so as to enjoin each defendant against the use of infringing lamps in any building or place not now lighted by either of them, or not lighted by them, respectively, prior to July 14, 1891,

with liberty to the complainants to renew the motion, if, in their judgment, the defendants refuse, upon reasonable terms, and for reasonable prices, to pay for patented lamps in buildings in which the use of such lamps is not enjoined. The orders should also require each of the defendants to file, within a specified time, with the clerk of the circuit court, a list of the buildings then lighted by them, respectively, which were not thus lighted prior to July 14, 1891.

So much of the orders of the circuit court as directed preliminary injunctions is sustained, without costs to either party, but the cases are remanded to that court, with instructions to modify its orders in the manner and to the extent hereinbefore stated.