ACCUMULATOR CO. v. EDISON ELECTRIC ILLUMINATING CO. OF NEW YORK.

(Circuit Court, S. D. New York. October 8, 1894.)

1. PATENTS—PROCESS AND PRODUCT—INFRINGEMENT — SECONDARY BATTERIES.
Reissue No. 11,047, of the Swan patent for a secondary battery, in which the active material is packed in and confined to perforations extending through the plate, is a patent for a product, and not for a process; and hence infringement is not avoided by arranging pastilles or buttons of the material in molds, and then casting the plate around them, instead of first making the plate, and then packing the material in the perforations.

2. SAME—INFRINGEMENT SUITS—LACHES—EXCUSE FOR DELAY.
  Delay in suing an infringer may be excused on the ground that the
  infringing article, as at first constructed by defendant, was not believed
  by complainant to be commercially harmful, the grounds for such belief
  being reasonable.

This was a suit in equity by the Accumulator Company against
the Edison Electric Illuminating Company of New York, impleaded
with the Electric Storage Battery Company.

Betts, Hyde & Betts, for complainant.

Eaton & Lewis and J. R. Bennett, for defendant.

LACOMBE, Circuit Judge.    The Battery Company, which is
named as a defendant, but which, being a nonresident, has not been
served, and does not appear, manufactures the articles alleged to in-
fringe.    The Illuminating Company has contracted to purchase a
large number of them, and is about to put them to use in this city.
Complainant is the owner of letters patent, reissue No. 11,047,
December 17, 1889 (original No. 312,599, February 17, 1885), to J.
W. Swan, for "secondary battery,—a variety of electric storage
battery.    The original patent, No. 312,599, was considered by this
court in Electrical Accumulator. Co. v. Julien Electric Co., 38 Fed.
117, and held invalid, as it described and claimed more than the
inventor discovered.    Thereupon, reissue was obtained, and such
reissue was considered by this court, and sustained, in Electrical
Accumulator Co. v. New York & H. R. Co., 50 Fed. 81 (opinion by
Judge Coxe).    In an application therefore for preliminary injunc-
tion on the same patent, the construction laid down in that opinion
will be adhered to.

The claim of the patent is for "a perforated or cellular plate for
secondary batteries, having the perforations or cells extending
through the plate, and the active material, or material to become
active, packed in the said perforations or cells only, substantially
as described."    Judge Coxe held that although the art already
showed plates in which the active material was packed into grooves
or holes not extending through the plate, and also plates where the
active material filled, not only the perforations, but also the entire
surface of the plate itself, Swan's combination, in which the perfora-
tions extended through the plate, and the material filled the per-
forations only, was original with him; that it was not only new, but
useful,—an important advance in the art; and that "the idea
which has made these plates a commercial success was first given to
the world, in a practical embodiment, by Mr. Swan."    No new
evidence tending to modify Judge Coxe's opinion being introduced,
it settles the law of this case, and the only question here is whether
defendant's plates infringe.

These plates, which are for secondary batteries, are perforated
plates.    The perforations extend through the plate.    The active
material is found in the said perforations, and in them only.    In-
fringement by the completed structure is so plain that defendant
has been constrained to insist that Swan's patent is practically for
a process, and therefore, as defendant's process of making the plates

is a different one, there is no infringement. Thus, Swan constructed a plate with perforations or cells extending through it, and then packed the material in the perforations. Defendants arrange pastilles or buttons of the material in a mold, and then cast the plate around them. Manifestly, the result is the same whether the material is packed within the bounding walls of the perforations, or whether the bounding walls of the perforations are packed around the material. Defendants also insist that the material which they use is not active when the process of packing antimonious lead around it is complete, and that it does not become active the moment it is placed in the battery fluid, but requires further electrolytic treatment before it becomes active. But the patent is not confined to active material; it includes "material to become active;" and whether it becomes active by one process or another is apparently immaterial. The gist of Swan's invention, as found by Judge Coxe, was the confining of the material which was to do the work within perforations which extended completely through the plate. The advantages of such plates is pointed out in his opinion, and those which defendant threatens to use are plainly such plates. There is nothing in the patent, or in Judge Coxe's opinion, which supports the contention that the claim is other than what it appears to be,—a claim for a completed article, not for a process of manufacture. Infringement is clear.

It is further contended on behalf of the defendant that complainant has been guilty of such laches as should preclude the granting of a preliminary injunction. In a case where this defendant, or its allied corporation, was complainant, the court of appeals, in this circuit, held that the owner of a patent was under no obligation to sue every infringer forthwith upon discovery of the infringement, provided he proceeded with due diligence against the one whom he did sue. Edison Electric Light Co. v. Sawyer-Man Electric Co., 53 Fed. 592, 3 C. C. A. 605. There is no suggestion of any unreasonable delay in prosecuting the test suits against the Julien Company and the New York & Harlem Railroad Company. Judge Coxe's decree in the last-named suit is dated April 12, 1892. The present action was begun in August, 1894. During the intermediate period, and for some years before,—certainly, since 1889,—the Storage Battery Company made plates which differed from those sold to the Illuminating Company, both in the size of the plate and in the size of the buttons. The plate now complained of is 15 inches square, and contains 256 buttons of active material. The older plates were 6 by 8 inches, and contained 9 or 12 buttons. Both were equally infringements of the patent, which is not confined to plates or buttons of any particular, absolute, or relative size. Complainant insists that it did not prosecute for infringement by the earlier plates for the reason that it did not believe them to be commercially harmful. The grounds for that belief are said to be the relative size of plate and button. In the later plates the loss by accident, while in use, of the contents of a single hole, would not, it is asserted, practically destroy the usefulness of the plate, being only a loss of 1-256 of the active material. A similar

accident to the older plate, however, would destroy its usefulness, as the single perforation holds 1-9 or 1-12 of the active material. This explanation seems a reasonable excuse for failing to prosecute against the older plates, and I find nothing in the transactions between the complainant's officers and those of the Storage Battery which should estop complainant from maintaining this action. In April, 1893, certainly, both sides understood, and expressed their understanding in writing, that the question of infringement of the several patents owned by complainant would be tested by suit. As to the Danish patent, the conclusion reached by Judge Coxe, without argument, viz. that "it is not for the same invention as the Swan reissue," is concurred in by this court, after argument. Motion for preliminary injunction granted.