### AUTOPIANO CO. v. CLAVIOLA CO. et al.

#### (Circuit Court of Appeals, Second Circuit. May 9, 1916.)

#### No. 246.

PATENTS ⬅328—VALIDITY AND INFRINGEMENT—NOTE SHEET GUIDE.

The O'Connor reissue patent, No. 13,398 (original No. 789,053), for a note sheet guide for player pianos, is valid, and covers a highly meritorious and broadly new invention. As so construed, *held* infringed by four different forms of defendant's mechanism, each of which embodies the principle of operation of the patented device.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Autopiano Company against the Claviola Company, the Superior Pneumatic Action Company, and Kindler & Collins. Decree in part for complainant, and both parties appeal. Affirmed on defendants' appeal, and reversed on complainant's appeal.

See, also, 222 Fed. 276, 138 C. C. A. 38.

This is a suit for infringement of reissued letters patent No. 13,398, granted April 2, 1912, to James O'Connor for a perforated note sheet guide. An interlocutory decree of the District Court, Southern District of New York, sustained the validity of the patent, and held that claims 1 to 12 and 16 to 27, both inclusive, had been infringed by defendants' device Exhibit 2, but that claims 9, 21, and 23 had not been infringed by defendants' devices Exhibits 3 and 4, nor had claims 9 and 21 been infringed by defendants' device Exhibit 5. Both complainant and defendants have appealed.

This is the third appearance of the patent before this court. The original patent, No. 789,053, dated May 2, 1905, of which the patent in suit is the second reissue, came before the court in the first instance on appeal from a decree of the District Court, Southern District of New York, dismissing a complaint against the Amphion Piano Player Company. The District Judge held that the web-guiding device therein described was not a pioneer invention, but merely an improvement on prior devices regulating the lateral displacement of note sheets in musical instruments by means of the substitution of surface control of the sheet for edge control, and that in view of the language of the specification and claims, of the prior art, and of the proceedings in the Patent Office, the patent could not be construed to cover an edge-controlled device such as the defendant made. On appeal to this court the decree of the District Court was affirmed without opinion. Autopiano Co. v. Amphion Piano Player Co., 186 Fed. 159, 108 C. C. A. 291. Thereafter the original patent was surrendered and reissued; the reissue, No. 13,283, bearing date August 15, 1911. Through an unfortunate mistake of the attorney who prosecuted the application for reissue, certain broad claims were withdrawn and narrow claims substituted. Shortly afterward a second reissue was applied for, and was granted April 2, 1912, in its present form. The reissued patent came before this court on appeal from a decree of the District Court, Southern District of New York, dismissing a complaint against the American Player Action Company on the ground of noninfringement and because claims 21 and 22 had been broadened beyond the invention originally disclosed. On appeal to this court the decree of the District Court was affirmed, not upon the grounds re-

lied upon by the District Judge, but for the reason that the complainant was estopped from claiming infringement against the particular defendant in continuing the manufacture and sale which it had entered upon while the first reissue was the only public announcement of complainant's alleged monopoly. Contrary to the conclusions of the District Judge, this court found that the second reissue was valid, and that the defendants' device infringed. Contrary to the conclusion of the District Judge in both Amphion and American cases, this court held that the invention of O'Connor was highly meritorious and broadly new. Autopiano Co. v. American Player Action Co., 222 Fed. 276, 138 C. C. A. 38.

The present defendants first employed a device known in this case as Exhibit 2, against the manufacture of which a preliminary injunction was granted by the District Court, Southern District of New York. Thereupon the defendants put out a device employing little levers and valves between the edges of the note sheet and control openings, resembling those present in the Amphion case. These devices are represented by Exhibits 3, 4, and 5 in this case, and were complained of by supplemental bill. On final hearing the District Judge sustained the patent in suit, and held that the defendants' device Exhibit 2 infringed 24 of the 27 claims of the patent in suit, but that the defendants' devices Exhibits 3, 4, and 5 did not infringe the claims in issue. In arriving at the latter conclusion the District Judge stated in substance that he felt constrained to follow the interpretation which had been placed upon the original patent in the Amphion case, and that the merits of the questions raised by the use of little levers and valves in connection with the reissue patent should be passed upon by this court. The claims in issue with respect to Exhibits 3, 4, and 5 are claims 9, 21, and 23, which read as follows:

"9. In a web-driving apparatus, in combination with a roll thereof, a motor for driving the roll sidewise and means normally held out of operation by the interposition of the sheet when in its normal position for moving the roll sidewise to restore the web to normal position when deflected therefrom."

"21. The combination of a tracker-bar having a series of music apertures, means for drawing a perforated note-sheet forward over the tracker-bar, a pneumatic control opening appurtenant to the tracker-bar and arranged so that a lateral deviation of the note-sheet will change its condition, a pneumatic motor connected to adjust the lateral relation between the note-sheet and tracker-bar, and connections between said control opening and said pneumatic motor arranged so that when a lateral deviation of the note sheet changes the condition of the control opening, the pneumatic motor will operate to restore the normal lateral relation between the tracker-bar and note-sheet before the forward run of the note-sheet in abnormal lateral position can produce discord."

"23. The combination of a tracker-bar having a series of music apertures, means for drawing a perforated note-sheet forward over the tracker-bar, two pneumatic control openings appurtenant to the tracker-bar and arranged so that a lateral deviation of the note-sheet in either direction will change the condition of one of said control openings, a pneumatic motor connected to adjust the lateral relation between the note-sheet and tracker-bar, and connections between said control openings and said pneumatic motor arranged so that when a lateral deviation of the note-sheet changes the condition of a control opening, the pneumatic motor will operate to restore the normal lateral relation between the tracker-bar and note-sheet before the forward run of the note-sheet in abnormal lateral position can produce discord."

Of these claims, claim 9 was in the original patent, but was not in issue in the Amphion case; claims 21 and 23 are reissue claims, of which claim 21 was in issue in the American case.

Frederick P. Fish, Louis W. Southgate, and O. Ellery Edwards, Jr., all of New York City, for plaintiff.

Thomas A. Hill, of New York City, for defendants.

Before COXE and WARD, Circuit Judges, and VEEDER, District Judge.

VEEDER, District Judge (after stating the facts as above). Inasmuch as this patent and the vicissitudes through which it has passed were fully discussed in our former opinion in the case of Autopiano Co. v. American Player Action Co., 222 Fed. 276, 138 C. C. A. 38, it is unnecessary to repeat the statement. The patent comes before the court for the first time in a form which embodies the invention actually made and without any intervening equities. We are now free to give effect to the claims in issue. As we said in our former opinion:

"The invention of O'Connor was a highly meritorious one and broadly new. The prior art contains nothing which should require it to be narrowly construed."

O'Connor introduced a very necessary and important improvement in the autopiano art by providing automatic instantaneous adjustment whenever there was a sidewise deflection of the note sheet on the tracker-bar. He accomplished this by his combination of control openings opened and closed by the deflection of the note-sheet, which control openings govern the operation of bellows motors connected to adjust the relation between note-sheet and tracker-bar. Instantaneous adjustment was affected by having the note-sheet in normal position hold the apparatus out of operation, so that when deflection occurred correction would take place instantly without the necessity of bringing the elements in operative positions.

The device by which this result was effected is described and illustrated by the patentee. The bearings which carry the shaft of the music roll are arranged to slide lengthwise in the frame pieces to adjust the music roll and note-sheet. In a block, secured by a screw to the under side of the tracker-bar, is a hole called a guide or control opening. This block is connected by a tube to a valve apparatus at the right of the air chest, which in turn is connected by a tube to a bellows motor having an arm arranged to engage a thrust collar on the shaft of the music roll. These parts automatically move the music roll instantly to the right to correct any deflection of the note-sheet to the left, the motion of the bellows motor being transmitted through the arm provided for this purpose. The mechanism for adjusting the music roll to the left is a duplicate of that just described and operates in the same manner. The guide or control openings are spaced so that the note sheet, when placed in correct or normal position on the tracker-bar, will maintain both openings in the same condition. In this way the note-sheet, when in normal position, performs the function of holding both motors out of operation. When the note-sheet is deflected from normal to abnormal position it destroys the inoperative or balanced condition of the motors and causes the proper bellows motor to operate before there can be the least forward run of the note-sheet over the tracker-bar in abnormal position.

The defendants' device Exhibit 2, which the District Judge held to infringe claims 1 to 12 and 16 to 27, both inclusive, of the patent in suit, is a servile copy of the patented structure, and requires no discussion. After a temporary injunction had issued the defendants developed the devices shown in Exhibits 3, 4 and 5. In Exhibit 3 the bearings which carry the shaft of the music roll are arranged to slide

lengthwise in the frame pieces to adjust the music roll and note-sheet sidewise. A block secured to the frame piece beneath the under side of the tracker-bar has a hole which forms the right-hand guide or control opening through a tube connection with a double bellows motor. The bellows motor has an arm connected by a link to a pivoted lever, the upper end of which is connected with a draw-bar at the rear of the apparatus. This draw-bar is in turn connected with the shaft carrying the right hand bearing of the music roll. In this way the bellows motor and opening are arranged to adjust the music roll automatically to the right to overcome any deflection of the note-sheet to the left, the motion of the bellows motor being transmitted through the pivoted link and draw-bar. For adjustment to the left a similar mechanism is provided, the two bellows motors being connected by a link to form a double bellows motor. The double bellows motor is connected with the exhaust chest by a tube and passages which have restricted openings into the motors so that there is normally a partial vacuum in each motor, the effect of which is to cause the motors normally to balance and lock each other from operation. Just below the tracker-bar is arranged a rod carried by two pivoted arms which extend forward beyond the face of the tracker and are arranged so that the note sheet will fit in between them. The rod is provided with collars both inside and outside the arms. Springs arranged between the arms and the collars allow the arms to be sprung slightly apart so that the note-sheet can be fitted snugly between them. The rod carries at each end a little valve. The right-hand valve is set in position to control the right-hand control opening, while the left-hand valve is set to control the left-hand control opening. The rod and valves are made of a length slightly less than the distance between the two control openings. The openings are positioned relatively to the tracker-bar so that the valves will be held at equal distance from the two blocks by the note-sheet when it is placed in normal position on the tracker-bar. In this position the valves will hold the two bellows motors out of operation, because the flow of air into the control openings, and thus into the two bellows motors, will be equal; that is, the balance of the two connected and opposed motors will not be disturbed. Thus the note-sheet, when in correct position, performs the active function of holding both bellows motors out of operation; when the note-sheet is deflected from normal to abnormal position, it instantly destroys the inoperative condition of the motors and causes the proper bellows motor to operate. Hence any deflection to either side is instantly corrected without any forward run of the note-sheet in abnormal position, the adjustment in either direction corresponding exactly to the deflection. This is plainly shown in operation; there is almost a continuous flutter or vibration of the bellows motors.

This is precisely the principle of the patent in suit. It makes no difference whatever in operation, function, or combination that in the O'Connor device the note-sheet itself by a deflection to one side opens one control opening and closes the other, while in the defendants' device the note-sheet by deflection to one side does exactly the same thing by pushing on the little levers and shifting the valves, that is, opens one

control opening and closes the other. The little levers and valves are merely added parts which do not in the least change the law of operation or affect the arrangement whereby a deflection of the note-sheet to one side opens the proper control opening and closes the other. O'Connor's arrangement by which the margins of the note-sheet accomplish the functions of opening and closing the guide openings directly is undoubtedly a better mechanical arrangement than the interposition of the levers and valves between the edges of the note sheet and the control openings, because it eliminates friction on the edges of the note-sheet. But this is merely the best arrangement of one of the elements of O'Connor's combination.

That side levers and valves are merely interposed parts can be clearly seen by comparing Exhibit 3 with Exhibit 2. The interposition of the levers and valves calls for no change in the connections between the control openings and motor, or in the double bellows motor, or in the link, arm and draw-bar connecting the double bellows motor to adjust the music roll sidewise. In short, the two control openings, opened and closed by sidewise deflections of the note-sheet, the two bellows motors connected to adjust the music roll, and the same law of instant correction, are present in defendants' device precisely as in the patent in suit. The use of the little levers simply impairs the most valuable way of using the control opening; but no one can infringe a combination claim by impairing the action of one of the elements, unless the principle of operation is changed.

In defendants' device Exhibit 4 the two pneumatic control openings are formed by the ends of two little bent brass pipes, which are carried on a block secured to the left-hand frame piece so that the control openings stand in line with the tracker-bar. A lever pressed to the right by a spring projects through a hole in the tracker-bar, and is connected by a link to a pivoted lever which carries the two valves for co-operation with the two control openings. The same double bellows motor arm, link, pivoted lever, and draw-bar are used as in Exhibit 3, and the two control openings are similarly connected to the double bellows motor by two tubes. The note-sheet, when in normal position, performs the active function of holding the double bellows motor out of operation. A deflection of the note-sheet one way or the other opens one and closes the other control opening, so that the double bellows motor operates to shift the music roll exactly as in Exhibit 3.

The defendants' device Exhibit 5 is substantially like Exhibit 4, save that a single control opening and a single bellows motor are employed, and the bellows motor arm connects directly with the draw-bar. The bellows motor has a spring inside tending to expand it. The lever is forced to the right by a weight. The note-sheet when in normal position performs the active function of holding the bellows motor out of operation by keeping the control opening part way open. A deflection of the note-sheet in one direction opens the control opening wider and causes the bellows motor to work to adjust the music roll in one direction, while a deflection in the opposite direction closes the control opening to cause the bellows motor to work to adjust the music roll in the other direction. In the American case, we held that a de-

vice containing one bellows motor, a spring, and one control opening was the equivalent of the two bellows motors and two control openings of O'Connor.

We are of opinion, therefore, that the defendants' devices Exhibits 3 and 4 infringe claims 9, 21, and 23 of the patent in suit, and that the defendants' device Exhibit 5 infringes claims 9 and 21. The decree appealed from is affirmed as to defendants' device Exhibit 2, and reversed as to defendants' devices Exhibits 3, 4, and 5.