SCHUBERT PIANO CO. v. ÆOLIAN CO.

(Circuit Court of Appeals, Second Circuit. June 13, 1919.)

No. 198.

PATENTS &⇒328—FOR MUSIC SHEET GUIDE NOT INFRINGED.

The Dickinson patent, No. 1,194,725, for a music sheet guiding device, held not infringed.

Ward, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Schubert Piano Company against the Æolian Company. Decree for defendant, and complainant appeals. Affirmed.

J. Edgar Bull and C. A. Weed, both of New York City, for appellant.
Louis W. Southgate, George D. Beattys, and E. W. Scherr, Jr., all of New York City, for appellee.

Before WARD, ROGERS, and MANTON, Circuit Judges.

MANTON, Circuit Judge. This appellant, which was the defendant in the case of Æolian Co. v. Schubert Piano Co., 261 Fed. 178, —— C. C. A. ——, decided herewith, sues, contending that the Æolian Company's sheet music guiding device infringes patent No. 1,194,725, granted to it after invention by Joseph W. Dickinson, on new and useful improvements in sheet music guiding mechanism.

On April 11, 1911, the application for this patent was filed. Then there was no reference or description to the so-called law of the bleeding port operation, as is now advanced, nor were any of the claims here in suit then made. A claim for a movable port and means for adjusting the same was advanced. The patent was granted on August 15, 1916, and this suit instituted on November 9, 1916. When finally

&⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

disposed of, the appellant relied upon claims 40 to 44, inclusive, and upon claim 49. It was stipulated upon the trial that the evidence taken in the case of Æolian Co. v. Schubert Piano Co. may be used in this action.

The appellant's claim, in substance, is that the Dickinson patent was distinguishable from the Thomson patent, referred to in the Æolian Company suit, by the statement of function, that the valve carried by the movable part engaged by the edge of the sheet maintains the port with which the valve co-operates in a bleeding position during the proper tracking of the sheet, and it is called a bleeding port.

As we have stated in our opinion in Æolian Co. v. Schubert Piano Co., the appellant's device, made pursuant to Dickinson's patent, employs a spring; the opposed actuating pneumatic and the movable part engaging the edge of the sheet and carrying the pneumatic valve controlling a port governing the operation of the actuating pneumatic adapted to an instrument operated by suction. The only difference in detail of construction, that we are able to discover, is that, in the Thomson device, relays are interposed between the port and the actuating pneumatic; but as we have pointed out, relays are not in any way made essential, nor, indeed, are they referred to in the claims of the Thomson patent. In the Dickinson patent, the relays are omitted. A relay, as used by the appellee in its device is the apparatus employed in the pneumatic connections to amplify the power. The so-called bleeding port is present in appellee's music sheet guiding device, as it is in the Thomson patent, just as much as it is in the Dickinson patent. The so-called bleeding port consists of a pinhole in the diaphragm. The statement in the Dickinson patent in relation to the size of the pipes, is as follows:

"Leading from the bellows to the usual pneumatic of the musical instrument is another tube 27; the opening thereinto from the bellows being somewhat smaller than that of the tube connecting the bellows with the movable port to permit proper operation of the bellows in a manner about to be described."

The drawings of the Dickinson patent do not show the diaphragm contended for by counsel for the appellant. Claims 40 and 41 in suit, describe the music sheet guiding device during the proper tracking of the sheet.

In both the Thomson and Dickinson devices, the operation of the guiding is accomplished as follows: If the sheet wanders to the left, the valve is moved further away from the port, letting too much air in the port, and weakening the actuating pneumatics, and allowing the adjusting spring to work to adjust the music sheet to the right to cure the left-hand deflection; and again, if the sheet wanders to the right, the valve will come closer to its seat than it was during the proper tracking of the music sheet, the actuating pneumatic will be strengthened, and will adjust the music sheet to the left to cure the right-hand deflection. In both devices a normal balance between the sheet and the actuating pneumatic is obtained by a bleeding port. The port must bleed during the proper tracking of the sheet, whether or not there are relays, for if it did not and remained closed for any ap-

preciable instant of time, the actuating pneumatic would overpower the opposed spring and throw the music sheet out of track.

To keep the superior actuating pneumatic reduced to a strength which balances the opposed spring, a proper amount of bleed must be kept in both devices, and the only difference in appellant's device is that the power reducing atmosphere goes directly from the port into the actuating pneumatic, and in appellee's device, with its relays, the atmosphere in turn is admitted into the actuating pneumatic from relay to relay, in larger and more effective quantities. Thus, in both devices, there is the constant bleed into the port, which maintains the pneumatic reduced to a balanced strength against the opposed spring when the sheet is properly tracking. Thomson's device anticipated the Dickinson device, and there is no infringement.

Other defenses are interposed. The appellee contends that there has been an abandonment of the invention prior to the renewal application, and that the examiner rejected the proposed change in the specifications and claims describing the bleeding port theory, and that, if Dickinson wished to proceed in good faith, he should have appealed from such decision and thus have made the issue of anticipation by the Thomson patent.

While the trial judge considered and sustained this claim of the appellee, and dismissed the bill, we do not deem it necessary to consider it now, nor to consider the other claims of anticipation, since we have concluded that the appellee does not infringe the patent in suit.

Judgment affirmed.

WARD, Circuit Judge (dissenting). The infringement of the Dickinson patent, 1,194,725, charged here, is the commercial device of the Æolian Company without relays. If this were made according to the patent, I think there would be the same constant struggle between the spring and the pneumatic bellows which distinguishes that device as patented. On the contrary, there is both in the Dickinson device and in the commercial device of the Æolian Company an equilibrium while the music sheet is traveling longitudinally. This is maintained by making the tube leading from the pneumatic bellows to the suction chamber with a restricted opening smaller than the valve port of the tube, with which it coacts. This was inherent in Dickinson's invention, although he did not at first appreciate it. It think it is admitted that each of these devices does operate upon what has been called the law of the bleeding port. This was incorporated by Dickinson in the specifications and claims while going through the Patent Office by amendment and as the opinion of the court proceeds upon noninfringement. I only add that it seems to me the amendments were properly allowed, and that Dickinson was not chargeable with laches.

As the Æolian Company did not begin to sell its commercial device until June, 1911, and Dickinson filed his application April 22, 1911, the Æolian Company infringes.

Therefore I think the decree should be reversed.