EDISON ELECTRIC LIGHT CO. et al. v. SAWYER-MAN ELECTRIC CO.

(Circuit Court of Appeals, Second Circuit. December 15, 1892.)

1. PATENTS FOR INVENTIONS—SUIT FOR INFRINGEMENT—LACHES.

The owner of letters patent No. 223,898, issued January 27, 1880, to Thomas A. Edison for an incandescent electric light, having seasonably brought suit in 1885 against the United States Electric Lighting Company for infringement, no other company engaged in manufacturing infringing lamps can complain that the owner of the patent was guilty of laches in not bringing suit against them for infringement prior to the decision of that case in the circuit court, (October 4, 1892,) for all persons interested in having the patent defeated must have been familiar with the litigation, and with the fact that it was very expensive and arduous, and they entered upon their business with an understanding of its risks, and of the consequences which would befall them as infringers if the patent should be sustained.

2. SAME.

There are much stronger equities, however, in favor of users who, prior to the decision in the circuit court, and at a time when judicial decisions in foreign countries interpreting the patent were in conflict, purchased from the infringers electric lighting plants which require the lamps of the patent for their operation, and who are now willing to accept their lamps

from the owner of the patent on reasonable terms; and on application to the court these equities will be enforced.

**3. SAME.**

As to users, however, who acquired their plants subsequent to the decision of the circuit court sustaining the patent, they must be held to have proceeded with full knowledge of the invalidity of the patent, and must suffer the consequences of infringement.

**4. SAME—INJUNCTION PENDENTE LITE—UNLAWFUL COMBINATIONS.**

A person owning a patent which has been sustained by an adjudication of the circuit court cannot be deprived of his right to an injunction pendente lite in a subsequent action against substantially the same parties for a further infringement, on the ground that he has entered into a combination with others owning similar patents for the purpose of securing an entire monopoly of the business in the United States.

**5. SAME—ESTOPPEL.**

In May, 1885, complainant, the Edison Company, owning letters patent No. 223,898, issued January 27, 1880, to Thomas A. Edison for an incandescent electric lamp, commenced a suit for infringement against the Consolidated Company, which was manufacturing electric lamps under the Sawyer-Man patents. About the same time, the Thomson-Houston Company was engaged in manufacturing electrical apparatus, and as the result of negotiations between it and the Consolidated Company the defendant, the Sawyer-Man Company, was organized to manufacture under the Sawyer-Man patents, the Consolidated Company executing a license to it. The majority of defendant's stock was owned by the Thomson-Houston Company, which thereafter sold the same to the Consolidated Company, in consideration of a large amount of the latter's stock and bonds. Subsequently the Thomson-Houston Company sold such stock and bonds to the Westinghouse Company, and at the same time, by an agreement between the Thomson-Houston Company and the Consolidated Company, the fulfillment of which on the latter's part was guarantied by the Westinghouse Company, the Thomson-Houston Company was licensed to make incandescent lamps for export and for use with apparatus of its own manufacture in this country, and the Westinghouse Company was prohibited from selling incandescent lamps for use with the Thomson-Houston Company's generating apparatus. The agreement recognized the fact that during its continuance the Thomson-Houston Company could make and sell lamps not covered by the Sawyer-Man patents, and in that event the Consolidated Company was to be released from its obligation not to sell lamps for use with the Thomson-Houston Company's apparatus. In the mean time, and while the suit between the Edison Company and the Consolidated Company was still pending, the Edison Company and the Thomson-Houston Company had united, so that substantially the whole lamp-making business was done by the three companies. *Held*, that the fact that the Edison Company entered into this combination did not operate as an estoppel, because of the dealings between the Thomson-Houston Company and the Westinghouse interests.

Appeal from the Circuit Court of the United States for the Southern District of New York.

In Equity. Bill by the Edison Electric Light Company and the Edison General Electric Company against the Sawyer-Man Electric Company for infringement of a patent. A pro forma decree, awarding a preliminary injunction, was entered below, and the defendant company appeals. Decree modified.

Kerr & Curtis, (Edmund Wetmore, Elihu Root, and Leonard E. Curtis, of counsel,) for appellant.

Dyer & Seely, (Clarence A. Seward, Grosvenor P. Lowrey, and Richard N. Dyer, of counsel,) for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. This is an appeal from an order of the circuit court granting an injunction pendente lite restraining the defendant from making, using, or vending the incandescent electric lamps of the patent granted to Thomas A. Edison, January 27, 1880, No. 223,898, of which the complainants are the owners. The order was granted pro forma, in the view that a final disposition of the questions involved might be promptly made by the decision of this court. The validity of the patent, and the infringement of its second claim by such lamps as the defendant makes, were adjudged by the circuit court for the southern district of New York, July 14, 1891, in a decree at final hearing. That suit was brought against the United States Electric Lighting Company, and was defended by the Westinghouse Electric Company, a corporation which since October 10, 1888, has been the owner of the business carried on in the name of the present defendant. The business of the defendant consists exclusively in the manufacture of the infringing lamps. The decree of the circuit court adjudging the validity of the second claim of the patent, and its infringement by lamps such as are made by the defendant, was upon an appeal affirmed by this court October 4, 1892. See 52 Fed. Rep. 300. That decree, among other things, awarded the complainants a perpetual injunction. The present suit was brought subsequently to that affirmance.

It is apparent that the order for the present injunction is, in effect, one to extend the terms of an injunction already granted in a suit determined by the court of last resort between the same parties, or their privies, so as to include a new infringement. For an understanding of the grounds upon which the defendant contends the injunction ought not to have been granted, the following narrative is necessary: For several years subsequent to 1880, the Edison Company and the United States Electric Lighting Company were the only manufacturers of incandescent lighting apparatus in this country doing any considerable business. The United States Electric Lighting Company began manufacturing incandescent lighting apparatus, including the lamps which have been held to be an infringement of the Edison patent, in the summer of 1880, and continued in such business until a recent period. In May, 1885, a suit was brought against it upon the present patent. Another corporation, the Consolidated Electric Lighting Company, was organized in September, 1882, and began the manufacture of incandescent lighting apparatus. This company was the owner of and operated under what are known as the "Sawyer-Man Patents" for electric lighting apparatus; and under these patents it assumed that it had the exclusive right to make and sell the lamp claimed in the patent in suit. In May, 1885, suit was brought against it by the Edison Electric Light Company upon the patent in suit, and about the same time it brought suit against the Edison Company for infringement of its own patent. In 1883 a corporation known as the "Thomson-Houston Company" began the manufacture and sale of electric apparatus for lighting and power. As the result of negotiations between the Consolidated Electric Lighting Company and the Thomson-Houston Company, the Sawyer-Man Company, the present defendant, was organized in September,

1886. Nine tenths of its stock was owned by the Thomson-Houston Company. It received from the Consolidated Company a license to manufacture lamps under the Sawyer-Man patents, and thereupon began the business of manufacturing the infringing lamp, and has continued in this business to the present time. In August, 1887, all the stock of the defendant, including that owned by the Thomson-Houston Company, was sold to the Consolidated Company for $120,000 in bonds, and the same amount at par of its stock. In December, 1888, the Thomson-Houston Company sold its stock in the Consolidated Company to the Westinghouse Electric Company. At the same time, by an agreement between the Consolidated Company and the Thomson-Houston Company, the fulfillment of which on the part of the Consolidated Company was guarantied by the Westinghouse Company, the Thomson-Houston Company was licensed under the patents of the Consolidated Company to make incandescent lamps for export and use with generating apparatus of its own manufacture in this country; and the Westinghouse Company was prohibited from selling incandescent lamps for use with the Thomson-Houston generating apparatus for a period which might, at the option of the Thomson-Houston Company, extend to 1902. This agreement recognized the fact that the Thomson-Houston Company could, during the continuance of the agreement, make and sell lamps not covered by the Consolidated Company's patent; and, in the event of such manufacture and sale, the latter company was released from its obligation not to sell lamps for use in connection with the Thomson-Houston generating apparatus. Pending the suit against the United States Electric Lighting Company, the Westinghouse Company succeeded to the business of the United States Company, the Consolidated Company, and the defendant; and since September, 1888, the defendant has been the manufacturer of lamps for the Westinghouse system. Each of the various companies engaged in the manufacture and sale of electric lighting apparatus has, as a rule, manufactured all the different pieces of apparatus which are necessary for making up a complete "plant," the different parts being constructed with reference to use with each other, and not so as to be adapted for use in the systems of apparatus made by other manufacturers. For the purpose of public lighting from central stations, local companies, known as "illuminating companies," have been organized in various cities and towns, which have purchased plants from one or the other of the manufacturing companies, and the central stations of such illuminating companies have, as a rule, been equipped wholly with the electrical apparatus made by some one manufacturing company. In many cities and towns there are competing illuminating companies using the system of different manufacturers, some being equipped with the Edison system, some with the Westinghouse system, and some with the Thomson-Houston system. The United States Company has installed about 1,050 plants, with a lamp capacity of about 350,000 lamps. About 300 of these plants were installed before the suit upon the patent was brought against it. The Consolidated Company also installed a large number of plants. After the Westinghouse Company succeeded to the business of the

United States Company and the Consolidated Company, it also installed a large number of plants. It is said that the aggregate lamp capacity of the incandescent lighting plants installed with generating apparatus supplied by the Westinghouse Company at the present time represents a capital of about $25,000,000, and a lamp capacity of over 1,300,000 lamps. The lamps themselves represent but a small part of the cost of the plants, the greater part being represented by the electric apparatus supplied by the Westinghouse Company and its predecessors; but the lamps are essential for the continued operation of the plants. Unless the lamps can be replaced as they are worn out, and can be procured when needed, these plants will be crippled, and the greater part of the investment in them will be lost. The central station plants supply lights to consumers as gas companies supply gas; and, if their operation should be stopped, great inconvenience to the public would ensue. The various companies give employment to a large number of men who might be thrown out of employment if the lamps could not be obtained. In 1889 the Edison General Electric Company was organized for the purpose of combining the Edison Electric Light Company with various other corporations engaged in the manufacture and sale of electric apparatus, the organization of the subordinate corporations being retained. Prior to April, 1892, the Thomson-Houston Company had acquired the stocks of various other companies engaged in the business of manufacturing and selling electrical apparatus, and these companies were carrying on the business in combination with the Thomson-Houston Company and under its control. In April, 1892, these two combinations, the Edison General Electric Company and the Thomson-Houston Company, included substantially all the companies which had heretofore been competing in this kind of business, excepting the Westinghouse Company; and in that month the General Electric Company was organized for the purpose of combining these two combinations in one which should include all the concerns in this country, except the Westinghouse Company, which formerly were competing in the business of making and selling electric light and power apparatus, but the separate organization of the constituent companies was still retained.

The defendant insists that the preliminary injunction should not have been granted because, (1) owing to the laches of the owners of the patent in asserting their claims and enforcing them, a large capital has been invested in the manufacture and sale, not only of the lamps, but also in electric lighting apparatus, which will be greatly depreciated in value unless the lamps can be used with it, and that an injunction will cripple and perhaps ruin the local illuminating companies who have invested in the plants of the Westinghouse Companies if they are prevented from using the lamp of the patent, and thereby subject to great inconvenience those whom these plants furnish with light, and displace a large number of persons who are employed in operating the plants; (2) because the complainants and the other corporations with whom the complainants are associated, the competitors of the Westinghouse Company in the business of making and supplying electric power and lighting, have entered into

an unlawful combination to stifle competition in that business, and an injunction will be used unconscionably to further the objects of the combination; and (3) because by reason of the affiliation of the Thomson-Houston Company with that combination, and the prior dealings of that company with the defendant, the Consolidated Company, and the Westinghouse Company, an equitable estoppel has arisen, by force of which the complainants, as parties to the combination, ought not to be permitted to have an injunction.

The question whether there has been any laches in asserting the patent was considered by the circuit court of appeals upon the appeal from the decree of the circuit court, and that court declared that no case was shown to authorize the refusal of an injunction on any theory of laches or equitable estoppel by reason of undue delay in bringing suit, or acquiescence in known infringement. If the owners of the patent proceeded with due diligence as respects the United States Lighting Company, no other infringers of the patent can be heard to complain with reason that suit was not brought against them upon the patent previous to the adjudication of its validity in the circuit court. It is a matter of notoriety that that litigation was a very expensive and arduous one; and its progress must have been familiar to all those who were extensively interested in having the patent defeated. As regards the present defendant, there are no new facts of importance bearing upon the question of laches to distinguish the case from that shown in the former suit. We see no reason for changing the opinion expressed by this court in the former case, and do not deem it necessary, because the same defense has again been urged upon substantially the same state of facts, to add anything to that opinion. Every one of the manufacturing corporations, the competitors of the Edison Companies, commenced their operations with a knowledge of the existence of the patent in suit. They were controlled by business men of intelligence and experience. Their promoters and managers may have believed, and probably did, that the patent could not be successfully maintained; but they entered upon the business with an understanding of its risks, and of the consequences which would befall them as infringers, if the patent should be sustained. None of them can now be justly heard to say that an injunction which is essential, if not indispensable, to the protection of the owners of the patent and their licensees ought not to be granted because of the great pecuniary loss which may result. If, in consequence of being deprived of the use of the lamps, their investments in other electric apparatus will be greatly depreciated, they must take the consequences.

The users who have supplied themselves with electric lighting plants from the infringers, which required for their operation lamps of the patent, are of course infringers; but those who did so before the decision of the circuit court sustaining the patent, and at a time when judicial decisions in foreign countries interpreting the patent were in conflict, and who are now willing to accept their lamps from the complainants upon reasonable terms, have much stronger equities than the manufacturing infringers. These equities the court will not disregard; but what would be reasonable terms, if an appli-

cation were made to the court on behalf of these users, is a question which can only be determined in each case upon its particular circumstances. As to those users, however, who have acquired these plants subsequent to the decision of the circuit court, if they are deprived of the use of the lamps, and as a consequence the value of their plants may be greatly impaired, they must accept the result as a consequence of their own imprudence.

We are not disposed to investigate upon the present case the character of the combination which has been formed under the name of the "General Electric Company." Whether that combination is intended to fetter competition, and is illegal as one in restraint of trade, is a question which we should not undertake to decide upon the evidence before us and in a suit to which it is not a party. The present complainants are entitled by the patent laws to a monopoly, for the term of the patent, of the manufacture and sale of the lamps made under it. The right to this monopoly is the very foundation of the patent system. They do not lose that right merely because they may have joined in a combination with others, holding other patents securing similar monopolies, which combination may, when judicially examined in a proper forum, be held to be unlawful. We do not feel justified in assuming upon the facts before us in the present suit that the use which the complainants propose to make of the injunction—an injunction which seems necessary to secure their monopoly and make their patent fruitful—will be such as to promote any other monopoly. When it shall be made to appear that some one, to whom in fairness and good conscience these complainants should sell their lamps, has been arbitrarily refused them, save upon oppressive and unreasonable terms, it will be time to consider whether the complainants should be allowed to continue in possession of the injunction.

The alleged estoppel seems to be farfetched and shadowy. The history which has been given shows that, before the Sawyer-Man Company was organized, litigation upon the patent in suit and upon the Sawyer-Man patents had commenced; that in 1887 the stock in the Sawyer-Man Company owned by the Thomson-Houston Company was sold to the Consolidated Company, a party to the suits; and that subsequently, in 1888, the Westinghouse Company, an actual party to the litigation, bought that portion of the stock from the Consolidated Company which had been owned by the Thomson-Houston Company. The estoppel lacks the elements which ordinarily create an estoppel in pais, namely, an injury or a harm to one person, resulting from a reliance upon the acts, conduct, or declarations of another, in which there was an element of bad faith or willful neglect of duty. The history of the connection of the Thomson-Houston Company from 1886 to 1888 with the Consolidated Company, and with the Sawyer-Man Company, the defendant, shows that all these companies knew of the existence of the litigations in which the life of the present patent and of the Sawyer-Man patent was at stake. There can be no charge of concealment or constructive fraud. When the sale and the agreement of 1888 were made, there was no implied obligation upon the Thomson-Houston Company to remain in alliance with the Westinghouse system. The con-

tingency that it might enter upon the manufacture of competing lamps was contemplated. Its union with the Edison interests has neither hastened nor facilitated the application for the present injunction. We perceive no adequate reason from the facts why the complainants should not obtain the ordinary results which attend a complainant's success in a suit in equity for the infringement of a patent.

The injunction order appealed from should be modified so as to cover only lamps made in infringement of the second claim of the patent, the other claims not having been infringed, according to the adjudication of the circuit court or of this court. It should also contain a provision reserving the right to the defendant to move hereafter for the vacation, suspension, or modification of the injunction upon proof of specific instances of refusal on the part of the complainants, or either of them, to supply the lamps of the patent upon terms reasonable, under the circumstances of the particular case, to the owners of electric lighting plants which were installed before the rendition of the interlocutory decree of the circuit court sustaining the validity of the patent.