FRASER v. DUFFEY et al.

(District Court, D. Massachusetts. February 26, 1912.)

No. 70. (old No. 463).

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—SHOE LAST.

The Taylor patent, No. 601,622, for a shoe last, comprising a fore part and a heel part connected by a pivot to enable said parts to have a relative movement for shortening the last, said pivot being located in or above the line of pressure between the toe and heel tending to collapse said last, was not anticipated, discloses invention, and is valid; the invention being one of great utility; also *held* infringed.

2. PATENTS (§ 286*)—SUIT FOR INFRINGEMENT—TITLE TO SUSTAIN.

A prima facie record title to a patent through assignments duly executed and the validity of which is not questioned by any of the parties thereto is sufficient to sustain a suit for infringement.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 453–456; Dec. Dig. § 286.*]

3. MONOPOLIES (§ 21*)—EFFECT ON RIGHT TO SUE FOR INFRINGEMENT OF PATENT.

That the complainant is a member of an illegal combination in restraint of trade is not a defense to a suit for infringement of a patent.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 15; Dec. Dig. § 21.*]

In Equity. Suit by William A. Fraser against Thomas C. Duffey and others. On final hearing. Decree for complainant.

Geo. H. Maxwell, for complainant.

H. J. Jaquith, for defendants.

COLT, Circuit Judge. [1] This is a suit for infringement of the Tyler patent, No. 601,622, dated March 29, 1898, for an improvement in shoe lasts. In describing the invention, the specification says:

"My invention relates to that class of lasts which are divided transversely into two sections, so as to allow the last to be contracted in length and withdrawn from the boot or shoe without exerting any strain upon the upper by the removal of the last; and the object of my invention is to increase the strength and rigidity of the last when in use and to so shape and arrange the sections of the last as to facilitate its removal and increase its efficiency.

"The last embodying my invention is divided transversely into two sections. One of these sections A includes the heel portion of the last and the other section B the forward portion of the last, these sections being generally called respectively, the 'heel' part and 'fore' part. In forming these parts the last is (in the preferred form now shown) divided on the line C C', extending from the bottom of the last obliquely upward, so as to make the angle D on the portion B between the line C C' and the bottom of the last an obtuse angle. The portion B is then cut away on the line E E', beginning at or near the center of the line C C' and extending obliquely upward and forward to the point E', thence on the line E' E² vertically, so as to form a right angle with the top line F of the last, forming an open space G between the portions A and B. The leaves II II of a hinge are inserted in slots cut in the sections A B of the last and are held in place by pins (shown by broken lines II' II¹), so as to connect the two sections of the last by a hinge-joint having its pintle I or axis of its rotation lying within the angle included between the lines C C' and E E'. The position of the pintle I is determined by making the radial distance between the axis of the pintle and the center

of the heel-section at *a*, as indicated by the broken line *a'*, equal to the radial distance from the axis of the pintle to the point *b* at the bottom of the heel-section, as indicated by the broken line *b'*, said measurements being taken in a plane dividing the last in the center vertically, as shown by the sectional view in Fig. 2, and the two equal radii *a'* and *b'* are also the radii of the arc of the circle *a b*, so that the path of the point *b* as the heel-section is raised will correspond with the arc *a b*, or, in other words, the axis of rotation of the heel-section is concentric with the arc of the circle *a b*, bounding the rear side of the heel-section from the bottom of the heel at *b* to the center of the heel at *a*."

The invention is illustrated in the following drawing from the patent:

*Fig. 1*

Claims 1, 2, 3, and 5 are in issue. It is sufficient to cite claims 1 and 2:

"1. A last comprising a fore part and a heel part connected by a pivot to enable said parts to have a relative movement for shortening the last, said pivot being located in or above the line of pressure between the toe and heel tending to collapse said last.

"2. In a transversely-divided last, the combination of a heel part and a front part divided on a line extending from the bottom to the top of the last and having an angular piece removed forming a space, as at *G*, with its apex near the center of the last, said heel and fore parts being provided with transverse slots in a horizontal plane to receive the leaves of a hinge; a hinge uniting said heel and front sections having its leaves inclosed within said transverse slots in the heel and fore parts, and means for retaining said leaves within said slots, whereby the strain in a vertical plane upon the leaves of the hinge, is received by the body of the last, substantially as described."

The Tyler invention was before the Court of Appeals for the District of Columbia in the case of Arnold v. Tyler, 10 App. D. C. 175.

In its opinion in that case the court defines the invention as follows:

"A last comprising a fore part and a heel part connected by a pivot to enable said parts to have a relative movement for shortening the last, said pivot being located in or above the line of pressure between the toe and heel, tending to collapse said last."

In describing the merits of the invention and the prior art, the court says:

"In the manufacture of shoes the old wooden last of one solid piece of wood was found to be inconvenient on account of the difficulty of its removal

from the shoe in. the different processes to which the latter was required to be subjected and upon its completion. This difficulty, which was caused by the shrinkage of the leather of the shoe, it was sought at first to obviate by the construction of lasts composed of two or three parts closely fitted together, so as to form one compact last, the parts being a fore part, a heel part, and an intermediate upper part, of which the fore part and the heel part were permanently connected by a hinge of suitable construction, so located near the sole of the last as to permit the heel part to be swung upon it whenever it was desired to shorten the last and release it from the shoe. The intermediate upper ·part, which was of wedge shape, was utilized to keep the heel part in operative position when the last was in use. This construction was the subject-matter of a patent issued on January 1, 1889, to one George E. Smith.

"Subsequently it was sought to dispense with the third intermediate part, which was apt to be forced out of place by the pressure upon it, and therefore to fail in effecting its purpose and to permit the last to collapse, and it was found that if the hinge or pivot connecting the fore part with the heel part were placed on or above the line of pressure between the toe of the shoe and the middle of the heel which was the pressure that caused the last to collapse, and not below that line, as in the Smith patent, the pressure in question would be resisted, the last would not collapse under that pressure, notwithstanding that the intermediate wedge-shaped block was omitted, and yet the last could be effectively moved on its hinges or pivot, and thereby shortened whenever it was desired."

After a careful examination of the case at bar upon the record now before the court, I fully agree with the opinion of the Court of Appeals in Arnold v. Tyler. See, also, Miller v. Mawhinney Last Co., 105 Fed. 523, 525, 44 C. C. A. 581.

The Tyler invention represents a distinct advance in the shoe last art, and the evidence shows that this last has gone into extensive commercial use among shoe manufacturers. There is nothing in the prior art as exhibited in the record which is an anticipation of the Tyler device. On the contrary, the Tyler last possesses both novelty and great utility as compared with any of the lasts then in use or described in any of the prior patents.

It is my opinion, also, that the Tyler patent describes with sufficient clearness and certainty the Tyler invention, and that the claims of the patent are neither excessive, deceitful, nor void for want of certainty.

Upon the question of infringement I entertain no doubt. The complainant's exhibit, defendants' last, is the same in construction, organization, and mode of operation as the last of the Tyler patent.

A considerable portion of the defendants' brief is taken up with the three remaining defenses, namely, failure to prove title, abandonment, and combination in restraint of trade.

[2] 1. As to the complainant's title, the evidence·shows that the patent was granted to Abel D. Tyler, Jr., and Samuel Mawhinney, and by them assigned to the Tyler Hinged Last Company by assignment acknowledged before Edward S. Beach, notary public, and then assigned to the American Last Company by Francis J. V. Dakin, receiver of the Tyler Hinged Last Company, said assignment being acknowledged before C. F. Richardson, notary public, and was then assigned by the American Last Company to William Adolphus Fraser,

the complainant, said assignment being acknowledged before Henry W. Swasey, notary public.

I am of the opinion that, under these several assignments, the complainant acquired a title to the Tyler patent which cannot be questioned by these defendants in this suit for infringement. U. S. Rev. St. § 4898 (U. S. Comp. St. 1901, p. 3387); Goss Printing-Press Co. v. Scott, 108 Fed. 253, 47 C. C. A. 302; Underfeed Stoker Co. of America v. American Ship Windlass Co. et al. (C. C.) 165 Fed. 65.

2. On the question of abandonment, I find no evidence in this case sufficient to prove the abandonment or dedication to the public of the Tyler patent. Williams v. Boston & Albany Railroad Co., 4 Ban. & A. 441, 444, Fed. Cas. No. 17,716.

[3] 3. The defendants have set up in their answer that the complainant is a member of a combination, which combination is in violation of the Sherman Anti-Trust Law; and the defendants have introduced evidence which they contend establishes this fact.

Upon this point it is sufficient to say that this defense is not open in a suit for infringement of a patent. Motion Picture Patents Co. v. Laemmle et al. (C. C.) 178 Fed. 104; Motion Picture Patents Co. v. Ullman et al. (C. C.) 186 Fed. 174; Northwestern Consol. Milling Co. v. Callam & Son (C. C.) 177 Fed. 786, 788; Reynolds Tobacco Co. v. Allen Bros. Tobacco Co. (C. C.) 151 Fed. 819; Independent Baking Powder Co. v. Boorman (C. C.) 130 Fed. 726; General Electric Co. v. Wise (C. C.) 119 Fed. 922, 924; Otis Elevator Co. v. Geiger et al. (C. C.) 107 Fed. 131; American Soda Fountain Co. v. Green (C. C.) 69 Fed. 333; Edison Electric Light Co. v. Sawyer-Man Electric Co., 53 Fed. 592, 598, 3 C. C. A. 605; Strait v. National Harrow Co. (C. C.) 51 Fed. 819.

A decree may be entered for the complainant for an injunction and account.