## HARMS et al. v. COHEN.

(District Court, E. D. Pennsylvania.   March 21, 1922.)

No. 2271.

1. **Copyrights ⬿66—Playing music at moving picture theater "performance for profit."**

The playing of music in a motion picture theater to which a charge for admission was made was a "performance for profit," within the meaning of the copyright act, though the music was selected because fitting and appropriate to the action of that portion of the motion picture at that precise instant being shown upon the screen.

2. **Copyrights ⬿77—Employer of musician responsible for music played.**

The operator of a motion picture theater, who employs a musician to perform for profit under a contract by which the musician has authority to play whatever compositions are in accordance with his judgment appropriate and fitting, is responsible for any infringement of copyright by such musician, as against the objection that the musician is an independent contractor.

3. **Copyrights ⬿66—That music played was short excerpt no defense in infringement suit.**

That playing of music in motion picture theater consisted of short excerpts was no defense, in an action for infringement of copyright.

4. **Equity ⬿262—Paragraph of answer held proper denial of allegation of damage, as against motion to strike.**

Where paragraph of bill in infringement of copyright suit alleged that acts of defendant caused injury and damage to plaintiff, because it was deprived of exclusive rights to its copyright composition, was a mere conclusion from facts elsewhere averred, a paragraph of the answer denying its allegations must be construed as a denial of the specific thing charged —that is, the injury caused—and plaintiff was not foreclosed thereby of its right to recover such damages as the statute allowed, and a motion to strike out such paragraph of the answer must be denied.

5. **Copyrights ⬿48—Mere giving of professional copies does not constitute license to publicly perform.**

The mere giving to a musician of professional copies of music does not constitute a license to publicly perform.

6. **Copyrights ⬿75—Benefit to plaintiff no defense in suit for infringement.**

An averment in an answer in a suit for infringement of copyright that plaintiff was greatly benefited, and not damaged, by performance of its music, was immaterial.

7. **Copyrights ⬿45—Conveyance of material object no transfer of copyright.**

Under Copyright Act, § 1 (Comp. St. § 9517), the copyright owner has the exclusive right to print, reprint, publish, copy, and vend the copyrighted work, and under section 41 (Comp. St. § 9562) the copyright is distinct from the property in the material object copyrighted, and the sale or conveyance by gift or otherwise of the material object does not of itself constitute a transfer of the copyright, nor does the assignment of the copyright constitute a transfer of the title to the material object.

8. **Monopolies ⬿21—Unlawful combination between authors no defense in suit for infringement.**

It is no defense to a suit for infringement of copyright of musical selections that the authors, composers, and publishers have formed an unlawful combination, in violation of the Sherman Anti-Trust Act (Comp. St. §§ 8820–8823, 8827–8830); the remedies under the act being clearly defined and exclusive.

⬿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

9. Monopolies ⬅️12(2)—Right to perform musical composition not "trade or commerce," under the Sherman Act.

A copyright is an. intangible thing, and the right to perform a musical composition under a copyright is not "trade or commerce," and a combination of composers, authors, and publishers, under which extortionate license fees are demanded for public performances for profit of musical numbers copyrighted by the various members, does not constitute a violation of the Sherman Anti-Trust Act (Comp. St. §§ 8820–8823, 8827–8830).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Commerce; Trade.]

In Equity. Suit by T. B. Harms and another against William Cohen. On motion to strike out parts of answer. Granted in part, and denied in part.

Thomas G. Haight, of Jersey City, N. J., and Albert W. Sanson, of Philadelphia, Pa., for plaintiffs.

George Phineas Aarons and Sauder & Ehrenreich, all of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. The plaintiff, a corporation engaged in the business of publishing and selling musical compositions, has brought this suit as owner of the copyright in a musical composition entitled "Tulip Time," from "Ziegfield Follies, 1919." The defendant is alleged to be the owner and manager and operator of the Model Theater, where moving pictures and photo plays are exhibited and musical compositions are played, and to which the general public is admitted upon the payment of an admission fee. It is charged that the defendant, in infringement of the copyright, has given public performances for profit of the musical composition in question, by causing it to be played and performed in his theater for the entertainment and amusement of his patrons.

The answer, after denying ownership and control of the theater on the part of the defendant, and denying knowledge of many of the averments of the bill, avers, inter alia, in paragraph 12 of the answer:

"Defendant avers that no musical composition is performed or has been performed in said theater for profit."

And in paragraph 16:

"That there is employed an organist, who has contracted to play while the motion picture. and photoplays are being exhibited, such short excerpts of musical selections as may appear to her fitting and appropriate to the action of that portion of the motion picture at that precise instant being shown upon the screen. The said organist is an independent contractor, over whose actions while playing the defendant has no control. The defendant further avers that entire musical compositions are not played, but that merely short excerpts, continuously changing with the theme of the motion picture, are given. Defendant avers that no charge is made for the privilege of listening to the playing of music, which music is purely incidental, and not a part of the motion picture exhibited by the defendant in the conduct of his motion picture business; that the songs played in said theater were not performed by the defendant, or caused to be performed by him, publicly for profit."

[1] While the defendant denies that he owns or operated the Model Theater, the answer admits that at the theater daily exhibitions of

motion pictures and photo plays are given, to which the general public is admitted, on payment of an admission fee. I fail to see any distinction in law in favor of the performance of copyright musical compositions in moving picture theaters to which a charge for admission is made, as opposed to their performance in public restaurants, as an additional attraction to the customers of such restaurants, which latter were held to be performances for profit within the meaning of the Copyright Act in the case of Herbert v. Shanley Co., 242 U. S. 591, 37 Sup. Ct. 232, 61 L. Ed. 511. It may be assumed that music selected because it is "fitting and appropriate to the action of that portion of the motion picture at that precise instant being shown upon the screen," and "continuously changing with the theme of the motion picture," is played for the additional attraction to the audience and for its enjoyment and amusement. As Mr. Justice Holmes says in the case above cited:

"If music did not pay, it would be given up. If it pays, it pays out of the public's pocket. Whether it pays or not, the purpose of employing it is profit, and that is enough."

[2] As to the averments that the organist is an independent contractor, over whose actions, while playing, the defendant has no control, and that she plays only such short excerpts as may to her appear fitting and appropriate, they do not constitute a defense against the charge in the bill. He who employs a musician to perform in an exhibition for profit, under a contract by which the musician has authority to play whatever compositions are in accordance with her judgment appropriate and fitting, must be held responsible for all that is done by the musician. By giving her that authority the employer acquiesces in and ratifies whatever she does. If under his contract he has parted with the right to exercise this control over her actions, without making inquiry as to what she intends to play, he yet must be deemed to have taken part, and to have given her general authority to perform copyright compositions. Monahan v. Taylor, 2 Times Law Reports, 685 (Queen's Bench Division); Irving Berlin, Inc., v. Edelweiss Café & Investment Company, in the District Court for the District of Colorado (unreported). See, also, Performing Rights Society, Ltd., v. Thompson. 34 Times Law Reports, 351; Trow v. Boyd (C. C.) 97 Fed. 586.

[3] That the playing consisted of short excerpts is no defense. Folsom v. Marsh, 2 Story, 100, Fed. Cas. No. 4.901; Daly v. Palmer, Fed. Cas. No. 3.552; Hein v. Harris (C. C.) 175 Fed. 875, affirmed 183 Fed. 107, 105 C. C. A. 399; Boosey v. Empire Music Co. (D. C.) 224 Fed. 646. It follows that the clause, "Defendant avers that no musical composition is performed or has been performed in said theater for profit," in paragraph 12 and the last clause in paragraph 13, "Defendant avers that the selecting, playing, and rendering of any music in connection with any motion picture or photo play is under the exclusive control, operation, and direction of the organist, as appears more fully in paragraph 16 of this answer," and the whole of paragraph 16, must be stricken out.

Paragraph 14 of the answer denies each and every allegation of paragraph 14 of the bill. Paragraph 2 of the answer puts in issue the

averment of paragraph 2 of the bill that the defendant was and still is the owner and operator of the Model Theater and avers that, on the contrary, another owned and operated it.

[4] Paragraph 14 of the bill, alleging that the acts of the defendant are causing injury and damage to the plaintiff, because it is thereby deprived of the exclusive rights to its copyright composition, is a conclusion from facts elsewhere averred. Paragraph 14 of the answer must therefore be construed as a denial of the specific thing charged; that is, that injury is caused by the acts of the defendant. If the plaintiff shows that the acts complained of in the bill are the acts of the defendant, it is not foreclosed by the denial of its right to recover such damages as the statute allows. The motion to strike out is denied as to paragraph 14.

Paragraph 17 of the answer is as follows:

"Defendant is informed, believes, and therefore charges, that it has become a universal custom of musical composers and publishers to issue, and to send out to musicians in every part of the United States, what are known as 'professional copies' of their musical compositions, *with a request that these musicians publicly perform said compositions and thereby 'plug' or popularize and advertise said compositions to the ultimate benefit of the authors and publishers.* Defendant is informed, believes, and therefore charges, that professional copies of this selection, to wit, 'Tulip Time,' as well as others published by the plaintiff, were furnished by it, or through its agents, to the organist employed by the owner; that the issuance of such professional copies constituted a license to the recipient thereof to publicly perform such musical composition; that the plaintiff acquiesced in such public performance of the musical selection wherever and in what manner it was so played, and that the plaintiff was greatly benefited, and not damaged, by any such performance."

[5, 6] If the custom is as stated, the issuing and sending out of professional copies is, as part of the custom, accompanied by the request for public performance by the musicians to whom the copies are sent. The charge that the professional copies of "Tulip Time" were furnished to the organist is insufficient to bring the plaintiff within the custom, because there is no averment that the sending out was accompanied with the request constituting a part of the custom. The mere giving of professional copies does not constitute a license. The averment of acquiescence in public performance clearly is intended to imply that the acquiescence was through the sending out of the professional copies, for there are no other facts averred upon which the conclusion of acquiescence is based. The averment that the plaintiff was greatly benefited, and not damaged, by any such performance, is clearly immaterial, and the seventeenth paragraph as a whole must be stricken out.

Paragraph 18 of the answer avers in substance that the plaintiff is a member of the American Association of Composers, Authors, and Publishers, which includes a majority, if not all, of the composers, authors, and publishers in the United States; that the members thereof, for the purpose of securing to themselves "an unreasonable and extortionate profit, and for the purpose of establishing and maintaining an unreasonable and extortionate license fee for the performance of their musical numbers," have combined and assigned to the society the privilege to issue licenses for the performance of the music of the mem-

bers, and to charge such sums as the society might fix; that the society appointed an agent to issue licenses for the performance of the musical compositions in Philadelphia; that the agent demanded extortionate fees for such licenses, which the defendant refused to pay.

It is averred that the plaintiff is therefore engaged with others in a combination or conspiracy in restraint of interstate trade or commerce, in violation of section 1 of the Sherman Act; that the present bill is one of eight simultaneously brought by members of the alleged combination; and that the present suit is not a bona fide action to protect the plaintiff's rights, but is part of a combination or conspiracy to create a monopoly in the musical composing and publishing business, in restraint of trade, and to demand unreasonable and extortionate profit from moving picture theater owners and lessees.

[7] Under the Copyright Act (section 1 [Comp. St. § 9517]) the copyright owner has the exclusive right to print, reprint, publish, copy, and vend the copyrighted work, and under section 41 (Comp. St. § 9562) the copyright is distinct from the property in the material object copyrighted, and the sale or conveyance by gift or otherwise of the material object does not, of itself, constitute a transfer of the copyright, nor does the assignment of the copyright constitute a transfer of the title to the material object.

[8] Does a combination of composers, authors, and publishers, under which extortionate license fees are demanded for public performances for profit of the musical numbers copyrighted by the various members, constitute a violation of the Sherman Act (Comp. St. §§ 8820–8823, 8827–8830)? The agreement under which the alleged unlawful combination was formed is not before the court, and the question must be decided upon the averments in the answer. In order to constitute a defense, it must be established that one charged with infringement may be relieved from liability if the plaintiff is engaged in an alleged unlawful combination. Congress has declared in the Sherman Act that all such contracts and combinations in the form of trust or otherwise are illegal, but, on the other hand, has granted to musical composers a monopoly in their works, and has provided methods for enforcing their rights in the courts. If an infringer, when those remedies are invoked, may set up as a defense that the copyright is the object of an unlawful combination, and is being used to carry into effect the purposes of an unlawful combination, may he thus escape the results of his own wrongful act? If he can set up an unlawful combination as a defense against his infringement of the copyright, then any one who wrongfully trespasses upon or takes the property of another may set up as a defense that the property was being held and used by a member of an unlawful combination in carrying out the purposes of that combination. It would follow, if one took possession of cattle or beef belonging to a corporation or individual, a member of a combination for fixing the price of cattle or beef in restraint of trade, he would be relieved from liability to pay for the property so taken, or from returning it to its owner, upon producing proof that the owner was engaged in such unlawful combination. In the same manner one might with impunity take possession of oil, gasoline, sugar, or other

commodities belonging to members of an alleged trust or combination in restraint of trade. But there is no provision in the Sherman Act divesting members of combinations in restraint of trade of their property. The remedies under that act are clearly defined and are exclusive. Geddes v. Anaconda Mining Co., 254 U. S. 590, 41 Sup. Ct. 209, 65 L. Ed. 425; Motion Picture Patents Co. v. Ullman (C. C.) 186 Fed. 174; Fraser v. Duffey et al. (D. C.) 196 Fed. 900; Weyman-Bruton Co. v. Old Indian Snuff Mills (D. C.) 197 Fed. 1015; Corrugated Paper Patents Co. v. Paper W. M. Co. of N. Y. (D. C.) 237 Fed. 380; Edison Electric Light Co. v. Sawyerman Electric Co., 53 Fed. 592, 3 C. C. A. 605; U. S. Fire et al. Co. v. Halsted (D. C.) 195 Fed. 295.

[9] But a copyright is an intangible thing, and it is separate and distinct from the material object copyrighted, and the right under a copyright to perform musical compositions is not trade or commerce, any more than producing plays is trade or commerce, People v. Klaw, 55 Misc. Rep. 72, 106 N. Y. Supp. 341; or producing grand opera, Metropolitan Opera Co. v. Hammerstein, 162 App. Div. 691, 147 N. Y. Supp. 532; or the giving of exhibitions of baseball games, National League et al. v. Federal Baseball Club et al., 269 Fed. 681, 50 App. D. C. 165.

The answer does not set up that the defendant is affected in any other way by the alleged unlawful combination, except by his being prevented from producing the plaintiff's copyrighted music. The material object, the sheets of music, are not involved. If, therefore, the material object is not involved, so far as the defendant is concerned, the answer does not show that interstate commerce is directly affected by the combination, and it is therefore no defense. Hopkins v. United States, 171 U. S. 578, 19 Sup. Ct. 40, 43 L. Ed. 290; Anderson v. United States, 171 U. S. 604, 19 Sup. Ct. 50, 43 L. Ed. 300; Blumenstock Brothers et al. v. Curtis Publishing Co., 252 U. S. 436, 40 Sup. Ct. 385, 64 L. Ed. 649; Charles A. Ramsay Co. v. Associated Bill Posters (C. C. A. 2d Cir.) 271 Fed. 140. Paragraph 18 of the answer must therefore be stricken out.

It is ordered that the motion to strike out be granted, in so far as is consistent with this opinion, and otherwise be denied.