## F. A. D. ANDREA, Inc., v. RADIO CORPORATION OF AMERICA.

### No. 1129.

District Court, D. Delaware.
March 24, 1936.

William G. Mahaffy, of Wilmington, Del., and Thomas G. Haight, of Jersey City, N. J., for plaintiff.

Darby & Darby, of New York City, and E. Ennalls Berl, of Wilmington, Del., for defendant.

NIELDS, District Judge.

This is a motion to dismiss the bill of complaint for failing to state a ground of equitable relief. The bill is brought by F. A. D. Andrea, Inc., under section 16 of the Clayton Act (15 U.S.C.A. § 26), to compel Radio Corporation of America to grant a license to plaintiff under numerous patents.

As the legal sufficiency of the facts alleged is challenged, it is appropriate to consider the pleading. Plaintiff avers in its bill of complaint that in 1919 defendant entered into a conspiracy with Western Electric Company, Inc., the International Telegraph Company, the United Fruit Company, the Wireless Specialty Apparatus Company, General Electric Company, American Telephone & Telegraph Company, Westinghouse Electric & Manufacturing Company, and others to obtain and maintain a monopoly and to unreasonably restrain trade and to substantially lessen competition in interstate and foreign commerce in radio apparatus and particularly in the manufacture, sale, and shipment in interstate and foreign commerce of radio broadcast receivers, all in violation of section 1 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 1; that all United States patents owned or controlled by said parties to the conspiracy were pooled, and, by written agreements, cross-licenses under the patents were exchanged by the parties to the conspiracy; that by virtue of the pooling of the patents defendant was placed in a dominating and controlling position,

which it now holds, whereby a license under all of the patents of the corporations above named could be acquired only from defendant, all in violation of section 2 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 2; that by virtue of the conspiracy, pooling of patents, and the said agreements, and the vesting only in defendant of the right to grant a license under all of the patents of the pool, defendant became and now is in a completely dominating and controlling position in the industry relating to the manufacture and sale of radio broadcast receivers, which position defendant has utilized to restrain trade and lessen competition in interstate commerce and now maintains a monopoly therein; that defendant has granted licenses to a number of manufacturers of radio broadcast receivers under all of the patents of the said pool; that in January, 1935, plaintiff made application to defendant for a license under all of the patents of the pool on the same terms and conditions under which defendant had granted licenses to other manufacturers of radio broadcast receivers; that in February, 1935, defendant refused to grant plaintiff the said license. Further: ".That by reason of the said conspiracy aforesaid, in violation of section 1 of the Sherman Act, and of the dominating and controlling position defendant obtained thereby and now holds, in violation of section 2 of the Sherman Act; and by reason of the said patent pool, and the said cross license agreements under the said patents thereof; and by reason of defendant thereby being vested with the dominating and controlling position in the industry relating to the manufacture of radio broadcast receivers, and the exclusive position of granting licenses under all of the said patents of the said pool; and by reason of the granting of licenses thereunder to a substantial number of manufacturers of radio broadcast receivers; and by reason of defendant's refusal to grant a similar license to plaintiff, plaintiff has been prevented from engaging in the manufacture and sale of radio broadcast receivers in interstate commerce, and has been damaged and subjected to loss by the loss of business which it otherwise could and would have obtained; and is threatened with complete loss of its trade and commerce with foreign nations."

As relief plaintiff prays: "For an injunction restraining defendant from refusing to grant plaintiff a license under the

patents of the said patent pool on the same terms, in the same fields, and to the same extent for which defendant has granted licenses thereunder to other manufacturers of radio broadcast receivers; or, in the alternative, a mandatory injunction requiring defendant to grant plaintiff such a license."

The Clayton Act § 16, provides: "Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, including sections 13, 14, 18, and 19 of this chapter, when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings." 15 U.S.C.A. § 26.

Plaintiff asks this court to direct defendant to grant to plaintiff a patent license. Plaintiff contends that under section 16 of the Clayton Act any corporation is entitled to sue for injunctive relief against threatened loss from a violation of the anti-trust laws and that plaintiff is entitled to injunctive relief from the thing that threatens it with loss; that the pooling of the patents with cross-licenses placed defendant in a dominating and controlling position in the industry and violated the anti-trust laws; that defendant's refusal to license plaintiff occasioned loss and damage. At the hearing of the motion to dismiss the bill of complaint, plaintiff's counsel stated "that the injunctive relief that we asked for is that we be granted a license under that patent." And further stated: "I confess my only authority for that is that one sentence." The one sentence to which counsel referred is a sentence in an opinion of Mr. Justice Brandeis: "Unless the industry is dominated, or interstate commerce directly restrained, the Sherman Act does not require cross-licensing patentees to license at reasonable rates others engaged in interstate commerce." Standard Oil Co. v. United States, 283 U.S. 163, 172, 51 S. Ct. 421, 425, 75 L.Ed. 926. A proper interpretation of this language, says plaintiff, is that the Sherman Act requires cross-licensing patentees to license others at reasonable rates where the industry is dominated by cross-licensing patentees.

Counsel further stated: "It is new law. There is no question in the world about that. Frankly, the only thing squarely in point, is Justice Brandeis' language, and the broad principles."

Thus the issues presented are: (a) The import of the language of Mr. Justice Brandeis above quoted; and (b) the scope of the injunctive relief conferred by section 16 of the Clayton Act.

In Standard Oil Co. v. United States, supra, defendants were oil companies holding patents relating to oil cracking. They had pooled their patents and exchanged licenses. Also, they had entered into agreements fixing the royalty rates to be charged to their licensees. Suit was brought by the United States against defendants for violation of the Sherman Act. A private individual was not seeking a license. The government claimed defendants violated the Sherman Law by exerting control over the supply of cracked gasoline. The control was alleged to be exerted by means, both of the agreements fixing the royalty rates to be charged and by the pooling of patents. The court held that the cross-licensing patentees did not violate the anti-trust laws by licensing at onerous or unreasonable rates unless the industry was dominated or interstate commerce was directly restrained thereby. This proof was lacking.

The court dealt specifically with the agreements fixing onerous royalties to be charged. Such agreements are not alleged in the bill of complaint and are not features of this case. In the opinion of the court concerning these agreements Mr. Justice Brandeis said: "The Government next contends that the agreements to maintain royalties violate the Sherman Law because the fees charged are onerous. The argument is that the competitive advantage which the three primary defendants enjoy of manufacturing cracked gasoline free of royalty, while licensees must pay to them a heavy tribute in fees, enables these primary defendants to exclude from interstate commerce cracked gasoline which would, under lower competitive royalty rates, be produced by possible rivals. This argument ignores the privileges incident to ownership of patents. *Unless the industry is dominated, or interstate commerce directly restrained, the Sherman Act does not require cross-licensing patentees to license at reasonable rates others engaged in*

*interstate commerce.* Compare Bement v. National Harrow Co., 186 U.S. 70, 22 S. Ct. 747, 46 L.Ed. 1058; United States v. General Electric Co., 272 U.S. 476, 490, 47 S.Ct. 192, 71 L.Ed. 362. The allegation that the royalties charged are onerous is, standing alone, without legal significance; and, as will be shown, neither the .alleged domination, nor restraint of commerce, has been proved." (Italics supplied.) The court was not dealing with "others engaged in interstate commerce" or their rights to licenses. It was particularly dealing with defendants within the patent pool and whether their conduct was a violation of the anti-trust act.

■ Counsel was mistaken in considering plaintiff's position entirely novel. In the infringement suit of Radio Corporation of America v. Hygrade Sylvania Corporation (D.C.) 10 F.Supp. 879, 883, and in two similar suits in 1934, in the District of New Jersey, defendants filed a counterclaim in each suit asking for a decree that the plaintiffs hold the patents in suit in trust for the public and that they be restrained from prosecuting these suits until they grant express licenses to competitors on reasonable terms. In support of their counterclaim, counsel for defendant in the New Jersey cases stated in their brief: "That by reason of the domination of the radio industry and the domination of interstate commerce in radio apparatus and devices by plaintiff and its associates as aforesaid, defendant has a license implied in law under each and all of the radio patents of plaintiff, including the patents here in suit, to make, use and vend the inventions of said patents under reasonable terms." Counsel for defendants relied upon the same sentence in the opinion of Mr. Justice Brandeis in Standard Oil v. United States, stating in their brief: "Unless the Supreme Court in using the language above quoted was indulging in mere words, which assumption. is too violent to be indulged in, it meant that where an industry is dominated, the cross-licensing patentees must license at reasonable rates others engaged in interstate commerce."

The District Court of New Jersey disposed of these arguments in the following language: "The defendant insists that it has a license implied in law upon reasonable terms under the patents in suit because the plaintiffs have unlawfully restrained interstate commerce and, therefore, that the plaintiffs must hold their patents in trust for the public. The authority for this unusual contention is found in a sentence extracted from the opinion in the case of the Standard Oil Company v. United States, 283 U.S. 163, 51 S.Ct. 421, 425, 75 L.Ed. 926, which reads: 'Unless the industry is dominated, or interstate commerce directly restrained, the Sherman Act (15 U.S.C.A. §§ 1–7, 15 note), does not require cross-licensing patentees to license at reasonable rates others engaged in interstate commerce.' The meaning of the extract is so clear that it seems unnecessary to resort to the context of the opinion to find that the court was discussing whether or not onerous fees charged for licensing by cross-patentees violated the Sherman Anti-Trust Act (15 U.S. C.A. §§ 1–7, 15 note). The remedies of the anti-trust laws are exclusive. Harms v. Cohen (D.C.) 279 F. 276; Witmark v. Pastime Company (D.C.) 298 F. 470; United States v. Babcock, 250 U.S. 328, 331, 39 S.Ct. 464, 63 L.Ed. 1011. There is no law that one who restrains trade forfeits one's property to any person who chooses to take it."

■ I turn to the question of the scope of injunctive relief under section 16 of the Clayton Act. Aside from the sentence of Mr. Justice Brandeis, plaintiff claims the right to a license under a mandatory injunction directing defendant to grant such license. This position is unsound. The remedies afforded by the Sherman and Clayton Acts are expressly recited. It has been held, time and again, that they are the exclusive remedies. The right to a license is not a remedy recited in the acts . and therefore does not exist. Geddes v. Anaconda Copper Mining Co., 254 U.S. 590, 592, 41 S.Ct. 209, 65 L.Ed. 425; Harms v. Cohen (D.C.) 279 F. 276, 280. It is a settled and accepted doctrine of patent law that a patentee may withhold a license from any one he sees fit. Defendant had the same right and was at liberty to refuse plaintiff a license.

The motion to dismiss must be granted.