## BUCK et al. v. RUSSO.

### No. 4489.

District Court, D. Massachusetts.

Nov. 8, 1938.

318

Samuel Berkett and Guterman & 'Guterman, all of Boston, Mass., for plaintiffs.

Harry C. Mamber, of Lynn, Mass., for defendant.

FORD, District Judge.

This is a suit brought by one Gene Buck as President of the American Society of Composers, Authors, and Publishers, hereinafter called the "society", Irving Berlin, Inc., and Select Music Publications, Inc., against the defendant for an injunction and damages for infringement of the copyright of musical compositions. The facts are as follows:

The American Society of Composers, Authors, and Publishers is an unincorporated association organized under the laws of the State of New York with its principal place of business in New York City. Its membership, constantly changing, consists of more than seven hundred authors and composers of musical works, and the society was organized to protect performing rights in musical works, copyrighted by the members of the society, against infringement because of the public performance thereof for profit.

██ Gene Buck is president of the society and because of the number of its members and the impracticability in joining them and the common interest involved, he brought this suit for and on behalf of said society. The other plaintiffs are corporations organized under the laws of the State of New York and are engaged in the business of printing, publishing, and selling copyrighted musical works. The defendant is a resident of the City of Revere, in the Commonwealth of Massachusetts, and was the owner of what is commonly called a "dine and dance" establishment known as "The Frolic" located at Revere Beach, in Revere. It was possible to purchase food and drink in this establishment and the patrons danced to the music of an orchestra known as the "Don Humbert Orchestra", consisting of five pieces. The music was furnished and used by the orchestra for the purpose of inducing the public to patronize the establishment and pay for the entertainment in the purchase of food and drink. The defendant conducted his place of business for profit; and it was public; and the music was performed for profit. Herbert v. Shanley Co., 242 U.S. 591, 37 S.Ct. 232, 61 L.Ed. 511; Harms v. Cohen, D.C., 279 F. 276, 278.

Prior to the 13th day of January, 1937, one Irving Berlin devised and wrote the words and music of an original musical composition entitled "You're Laughing at Me", and prior to that date the composer assigned this composition to the plaintiff, the Irving Berlin, Inc., a publishing organization hereinafter called the "publisher," including all rights therein and the right to secure copyright; that on the 13th day of January, 1937, the publisher duly copyrighted this composition by publishing it and offering it to the general public with the following notice of copyright on the first page of the music, to wit: "Copyright MCMXXXVII, By Irving Berlin, Inc."

The publisher deposited in the mail and addressed to the Register of Copyrights, Washington, D. C., on January 15, 1937, two complete copies of the best edition of such publication, accompanied by a claim of copyright with the fee required for its registration, and it was duly registered by the Register of Copyrights, and a certificate of copyright registration was issued for it, and since that date this composition has been published by the publisher and upon each copy there has been inscribed on the first page the copyright notice required as above stated.

Further, I find that prior to the 16th day of October, 1936, one John Burke devised and wrote the music and lyrics of an original musical composition entitled "Pennies from Heaven" and prior to that date the composer assigned this composition to, the plaintiff, the Select Music Publications, Inc., a publishing organization hereinafter called the "publisher", including all rights therein and the right to secure copyright; that on the 16th day of October, 1936, the publisher duly copyrighted this composition by publishing it and offering it to the general public with the following notice of copyright on the first page of the music, to wit: "Copyright MCMXXXVI, By Select Music Publications, Inc."

The publisher deposited in the mail and addressed to the Register of Copyrights, Washington, D. C., on October 21, 1936, two complete copies of the best edition of such publication, accompanied by a claim of copyright with the fee required for its registration, and it was duly registered by the Register of Copyrights, and a certificate of copyright registration was issued for it, and since that date this composition has been published by the publisher, and upon each copy there was inscribed on the first page the copyright notice required as above stated.

The Irving Berlin, Inc., and Select Music Publications, Inc., who are members of the society, assigned to the society, for valuable consideration, the exclusive non-dramatic public performing rights in the two songs above mentioned for a term beginning January 1, 1936 and ending January 1, 1941.

The publishers are the proprietors of the copyrights in and to the musical compositions mentioned above except as to the rights assigned to this society and the society is the owner of the exclusive non-dramatic performing rights of these musical compositions up to and including the date above mentioned, January 1, 1941.

On June 10, 1937, a list of the members of the society was sent by registered mail to the defendant and in it were included the names of the two corporate plaintiffs. The defendant was informed that it should avoid the performance of any musical compositions copyrighted by any member of the society unless a license to do so was obtained from it.

There was a sharp conflict of testimony as to whether or not the compositions in

question were played at the establishment of the defendant, and the plaintiffs in support of their contention that they were, presented as a witness one Stewart H. Meyers, a field representative for the society who had been employed by them for twelve years, whose duty it was to investigate matters of this nature in and about the city of Boston. He testified that he visited the defendant's place of business July 6, 1937, purchased food and drink and that there were many other people in the place at the time eating and drinking and several persons were dancing at the time. This witness stated the orchestra played two choruses of each of the above named compositions and that he was familiar with the melodies and lyrics of both of them; that he had heard them sung and played a great many times by orchestras and over the radio, and at the time of his visit they were known as popular numbers. He testified he made notes of the pertinent facts in the restaurant at the time of his visit from which he refreshed his recollection at the time of the trial, and that immediately after his visit he had made a report of the matter to the society by which he was employed. He testified that he had considerable experience as a musician in times past and had been a professional player of the violin for some time.

The defendant in his denial that neither of the compositions was played at his establishment introduced the testimony of the leader of the orchestra, a member of the orchestra, a waiter, and the defendant himself, and all of them denied that the compositions had ever been played in the defendant's establishment. The leader testified he was given no instructions as to what to play and he never at any time played either of the compositions in question. He admitted he was familiar with the melodies of both and had played them on the radio, but he said he was disinclined to play songs that had become too popular and would have refused to play them even though he was requested, although he readily agreed that he aimed to please the patrons in his choice of selections. The proprietor and the waiter testified that they were familiar with the tunes but that they had never heard them played. The proprietor, in answer to an interrogatory, admitted in evidence, stated that he could not recall that they had been played.

I must confess, having seen the defendant's witnesses, that I was not impressed with their testimony. The statement of the orchestra leader was unworthy of credence. It seems ridiculous to suppose that an establishment that was catering to the public would avoid presenting just what common knowledge teaches us the public demands at a "dine and dance" establishment. It was perfectly possible that the proprietor, who was busy with his other duties, would fail to recall whether or not they had been played. The fact that he did not recall was of little value.

Although the defendant contended that the investigator for the society who testified was not competent to determine whether or not the copyrighted compositions were actually played, in my opinion he was perfectly competent and able to do so. He had training and experience in music, although I think that was not necessary. Any ordinary person can recognize an original air when he hears it repeated. An expert musician is not needed for this purpose.

■ I find that the orchestra leader was given no instructions as to what musical compositions he should play, was allowed to make his own selections, and that he and his orchestra on July 6, 1937, played two choruses of each of the compositions "You're Laughing at Me" and "Pennies from Heaven" at the establishment of the defendant known as "The Frolic".

The defendant, in addition to his denial that the compositions were played, contended that the plaintiffs were not the creators of a new and original work; that the essential elements of the compositions were in the public domain long before their creation and not the subject of a copyright. No evidence was introduced to support this contention. I find on the evidence that both the compositions in question were new and original works and were the creation of intellectual effort, and the certificate of copyright issued was valid. Arnstein v. Edward B. Marks Music Corp., D.C., 11 F. Supp. 535; Jones Bros. Co. v. Underkoffler, D.C., 16 F.Supp. 729; Norden v. Oliver Ditson Co., D.C., 13 F.Supp. 415; Hein v. Harris, C.C., 175 F. 875, affirmed 2 Cir., 183 F. 107.

Further, the defendant maintained that the plaintiffs' bill of complaint should be dismissed on the grounds that necessary and indispenable parties who had an interest in the controversy were omitted, and that there had been a misjoinder of parties plaintiff and of causes of action.

█ Equity Rules 37 and 38, 28 U.S.C.A. following section 723, provide that all persons having an interest in the subject of the action and in obtaining the relief demanded may join as plaintiffs, and that when the question is one of common or general interest to many persons constituting a class so numerous as to make it impracticable to bring them all before the court, one or more may sue or defend for the whole. It is recorded in Hughes' Federal Practice, § 4297, that this rule is declaratory of a well settled rule in equity practice, and this same author goes on to say (Section 4297): "The person who sues as representative of a class must have an actual interest in the controversy in like right with those whom he proposes to represent. In other words, the relation of the parties must be such that the representative and represented properly could be joined as coplaintiffs, if it were practicable to do so." Smith et al. v. Swormstedt et al., 57 U.S. 288, 302, 303, 16 How. 288, 302, 303, 14 L.Ed. 942; United States v. "Old Settlers," 148 U.S. 427, 13 S.Ct. 650, 37 L.Ed. 509; Carnahan v. Peabody, D.C., 31 F.2d 311; Metro-Goldwyn-Mayer Dist. Corp. v. Bijou Theatre Co., Inc., D.C., 50 F.2d 908; Amdur's Copyright Law & Practice, Chap. XXVII, Secs. 11, 14.

And as stated in McClelland v. Rose, 5 Cir., 247 F. 721, 723, Ann.Cas.1918C, 341: " * * * the fact that one's name does not appear as a party to a suit in equity, it does not necessarily follow that he is not bound by the result of it. * * * Representatives of the entire class * * * may * * * sue or defend for all * * * the judgment or decree rendered binding upon all."

█ In the instant case there is no question that the plaintiff, Gene Buck, could properly bring this suit as the representative of the members of the society.

█ Equity Rule 26, 28 U.S.C.A. following section 723, concerning joinder of causes of action, reads as follows: "The plaintiff may join in one bill as many causes of action, cognizable in equity, as he may have against the defendant. But when there are more than one plaintiff, the causes of action joined must be joint, and if there be more than one defendant the liability must be one asserted against all of the material defendants, or sufficient grounds must appear for uniting the causes of action in order to promote the convenient administration of justice. If it appear that any such causes of action cannot be conveniently disposed of together, the court may order separate trials."

Although the causes of action in this case are not joint on the ground that neither corporate plaintiff had any interest in the copyright owned by the other, yet sufficient grounds appear for uniting the causes of action in order to promote the convenient administration of justice. The plaintiff Buck suing on behalf of the society is interested in both causes of action; it was necessary to join the owner of the copyright in the suit; the latter was an indispensable party; a recovery in damages will inure to the benefit of the society; and the defendant "will be subjected to only one trial where he may defeat all claims or by satisfying one adverse decree bar all subsequent actions." Buck et al. v. Elm Lodge, Inc., 2 Cir., 83 F.2d 201, 202; Buck et al. v. Virgo, D.C., 22 F.Supp. 156; Buck et al. v. Royal Palms, Inc., D.C., 23 F.Supp. 29, 30; Independent Wireless Tel. Co. v. Radio Corp., 269 U.S. 459, 468, 46 S.Ct. 166, 70 L.Ed. 357.

█ As a matter of law I conclude that the defendant employed the orchestra above named and the latter performed publicly for profit two choruses of the compositions "You're Laughing at Me" and "Pennies from Heaven" which I find are a substantial and material part of those compositions and that he infringed the copyrights above described. M. Witmark & Sons v. Pastime Amusement Co., D.C., 298 F. 470, 479. That the defendant is not absolved from liability because no detailed choice of selections was given to him. It is settled that knowledge of the particular selections to be played is immaterial and intention to infringe is unnecessary. Buck et al. v. Jewell-La Salle Realty Co., 283 U.S. 191, 51 S.Ct. 410, 75 L.Ed. 971, 76 A.L.R. 1266; M. Witmark & Sons v. Calloway, D.C., 22 F.2d 412, 414; Harms v. Cohen, supra.

█ There was no misjoinder of causes, non-joinder or misjoinder of parties in the allegations of the plaintiffs' bill of complaint, and in accordance with the provisions of Title 17 U.S.C.A. § 25, the plaintiffs are entitled to the injunction which they seek and to the minimum statutory damages of two hundred fifty (250) dollars on each count. A decree may be entered in accordance with the prayer of the bill for an injunction and directing the defendant to pay the plaintiffs the sum of two hundred fifty (250) dollars on each

count of the bill of complaint. Westermann Co. v. Dispatch Printing Co., 249 U.S. 100, 39 S.Ct. 194, 63 L.Ed. 499; Douglas v. Cunningham, 294 U.S. 207, 55 S.Ct. 365, 79 L. Ed. 862; Lindsay & Brewster, Inc., v. Verstein, D.C., 21 F.Supp. 264.

■ The decree will also provide for an attorney's fee of one hundred (100) dollars and the costs of suit. Title 17 U.S.C.A. § 40.